Ellen F. BAER, Plaintiff-Appellant,

v.

UNITED SERVICES AUTOMOBILE AS-
SOCIATION, Defendant-Appellee.

No. 953, Docket 73–2723.

United States Court of Appeals,
Second Circuit.

Argued May 2, 1974.

Decided June 27, 1974.

Henry P. Wasserstein, John D. Feer-
ick, Henry P. Baer, Skadden, Arps,
Slate, Meagher & Flom, New York City,
for plaintiff-appellant.

Allen M. Taylor, Bower & Gardner,
New York City, for defendant-appellee.

WATERMAN, Circuit Judge:

This is an appeal from a decision of
the United States District Court for the
Southern District of New York, Motley,
J., granting defendant-appellee United
Services Automobile Association's
("United") motion for summary judg-
ment on the ground that plaintiff-appel-
lant Baer's action against United, which
had issued a policy of insurance to Baer,
was barred by a one-year limitations
provision in that insurance policy. The
district court believed that it had juris-
diction of the controversy under 28 U.S.
C. § 1332, but neither the complaint in
the district court nor the record before
us negates the possibility that the par-
ties are not of diverse citizenship. We
therefore, *sua sponte*, remand to the dis-
trict court with instructions to vacate
its judgment and dismiss the complaint
for lack of subject-matter jurisdiction.

The complaint in the district court identified the plaintiff as a citizen of the state of New York, and we have no reason to question the validity of this assertion. That same paragraph in the complaint then describes United as "a corporation organized and existing under the laws of the State of Texas having its principal place of business in the State of Texas." If this characterization were correct, diversity would exist, for under 28 U.S.C. § 1332(c) United would be deemed a citizen of the state of Texas and its citizenship would thus be diverse from that of Baer. But, in its answer in the district court, United, while purporting to concede that it "is a citizen and resident of the State of Texas,"[1] nevertheless denied that it had "knowledge or information sufficient to form a belief as to" whether it is a corporation. Subsequently, however, in its affidavit in reply to the affidavit filed by Baer in opposition to United's motion for summary judgment, United clarified its status by explaining:

> United Services Automobile Association is not the average insurance company. *It is indeed not a corporation,* but "an inter-insurance exchange" . . . . It insures only service-men, ex-service-men, and their immediate families. It sometimes refers to its insureds as "members" . . . . It attempts, to an extent, to treat its insureds as partners in an Enterprise, rather than to deal with them on a strictly adversary basis. (Emphasis supplied).

In the insurance policies it issues United very carefully maintains this self-appraisal by referring to itself only as an "inter-insurance exchange" or "reciprocal insurance association," both of which are familiar types of unincorporated associations.

■ Of our own accord we have examined the pertinent portions of the Texas statute under which United was organized and exists, the Texas Insurance Code of 1969, as amended. The two relevant chapters of that statute are Chapters Two and Nineteen, V.A.T.S., involving the incorporation of insurance companies and the organization of reciprocal exchanges, respectively. Inasmuch as Chapter Nineteen contains some cross-references to both Chapter Two and to the general corporation laws of Texas, see Texas Insurance Code, Articles 19.02, 19.03, one might surmise that under the Texas statute a reciprocal exchange is indistinguishable from an insurance corporation. Upon inquiry, however, what emerges is a statutory pattern which, while recognizing and retaining the distinction between the reciprocal exchange entity, traditionally a voluntary unincorporated association, and the insurance corporation, subjects both entities to the same supervision of state insurance officials. Thus, under Articles 2.01 and 2.04 of the Texas Insurance Code of 1969, as amended, insurance corporations and reciprocals alike must fulfill the same qualification requirements before they will be authorized to organize under the laws of Texas and to issue insurance. These statutory provisions are designed only to protect prospective insureds by preventing the organization of insurance entities whose chances of success are minimal because poorly financed or staffed and operated by personnel with inadequate experience in the field of insurance. There is no evident intention that this supervision is designed to intrude

---

1. Of course, under no circumstances can United's purported acknowledgment that it is a "citizen and resident [only] of the State of Texas" have the effect of conferring diversity jurisdiction on this court if, according to the applicable rules for determining "citizenship" of an organization such as United, that assertion be erroneous. Diversity does not in fact exist despite pleadings, admissions, or concessions if, under these applicable rules, and on the record as a whole, United must be considered a "citizen" of New York, the state of which Baer is unquestionably a citizen. See Wymard v. McCloskey & Co., 342 F.2d 495, 497 (3 Cir.), cert. denied, 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed.2d 68 (1965).

upon the traditional distinction drawn between corporations and reciprocal insurance associations, no matter how insignificant that distinction may appear to be as a practical matter. Indeed, the continuing validity of the distinction is expressly recognized by the statute itself, for that statute allows the reciprocal's members to limit their contingent liability to the amount of the premiums paid by each "if the free surplus of [the reciprocal] is equal to the minimum capital stock and minimum surplus *required of a stock company [i. e., a corporation] transacting the same kinds of business.*" Article 19.03. Thus, under the Texas statute, the reciprocal is regarded as distinct from an insurance "stock company" or, in other words, from an insurance corporation.[2] As we shall soon point out, this formal distinction drawn between the insurance reciprocal and the insurance corporation under state law seems to be, under United Steelworkers v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), dispositive on the issue of whether the reciprocal should be considered a corporation for diversity purposes, irrespective of whether the distinction is, as a practical matter, an artificial or illogical one. The existence of the distinction under state law, and not the logic underlying that distinction, is the paramount consideration.[3] Inasmuch as the Texas statute draws that distinction, we are constrained here to regard United as an unincorporated association.

■ For the purpose of determining whether diversity jurisdiction exists, unincorporated associations have long been considered to be citizens of each and every state in which the association has members. Thus, if the unincorporated association party to a lawsuit has any member whose state citizenship coincides with the state citizenship of any of the opposing parties in the lawsuit, a federal district court has no diversity jurisdiction. Rosendale v. Phillips, 87 F.2d 454 (2 Cir. 1937) (per curiam). Any trend toward erosion of this rule creating multiple state citizenship for unincorporated associations, see e. g., Mason v. American Express Co., 334 F. 2d 392 (2 Cir. 1964), seems to have been abruptly halted by United States Steelworkers v. R. H. Bouligny, Inc., *supra*, 382 U.S. at 149–153, 86 S.Ct. 272, in which the Supreme Court held that a labor union is not an independent "juridical personality" for the purpose of ascertaining its citizenship in diversity cases.

There, the Court did not dispute the logic of the union's contention that

. . . many voluntary associations and labor unions are indistinguishable from corporations in terms of the reality of function and structure, and to say that the latter are juridical

---

2. This distinction is drawn elsewhere in Chapter Nineteen. See Article 19.06 (emphasis supplied) :

   [The reciprocal s! all maintain] at all times a surplus over and above all liabilities equal to the minimum capital stock and surplus required of *a stock insurance company transacting the same kinds of business.*

3. We do not mean to imply that the distinction drawn under Texas law between a reciprocal such as United and an insurer incorporated under Texas law is an insubstantial distinction. To the contrary, in many respects United is dramatically different from an ordinary insurance company utilizing the corporate form for the purpose of doing business with the public at large. United, with a few exceptions, insures only present and former United States military personnel and their immediate families and adheres to the traditional concept that in a reciprocal insurance association the members, by exchanging contracts of insurance, are *both* the insurers and the insureds. In a very real sense then, when a disgruntled policyholder sues the reciprocal, he is suing not so much the entity as he is his fellow individual members of that entity.

   Besides this important conceptual difference, the statute recognizes formal structural differences between the reciprocal and the insurance corporation. For example, under the statutory scheme the reciprocal does not have the capital structure of a corporation but rather what is termed "free surplus." Having no capital structure, the reciprocal does not issue shares of capital stock.

persons and "citizens" and the former are not is to base a distinction upon an inadequate and irrelevant difference. [The union] assert[s], with considerable merit, that it is not good judicial administration, nor is it fair, to remit a labor union or other unincorporated association to vagaries of jurisdiction determined by the citizenship of its members and to disregard the fact that unions and associations may exist and have an identity and a local habitation of their own. Id. at 149–150, 86 S.Ct. at 274.

Yet, despite this acknowledgment of the significant similarity between corporations and certain other types of associations, the Court was unwilling to tamper with the existing statutory rule of 28 U.S.C. § 1332(c), which by its express terms applies only to corporations:

> We are of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts. Id. at 150–151, 86 S.Ct. at 275.

*Bouligny* appears to have been intended to truncate any further judicial enlargement of the clear language of 28 U.S.C. § 1332(c) and to disapprove any judicial enlargement which had already occurred. See, e. g., Truck Insurance Exchange v. Dow Chemical Co., 331 F.Supp. 323, 324–325 (W.D.Mo.1971); 3A J. Moore, Federal Practice ¶ 17.25, at 862–864 (Supp.1973).

We thus find the rule which has been traditionally applied to unincorporated associations apposite here. Furthermore, United appears to be *precisely* the type of unincorporated reciprocal insurance association which was held by the Tenth Circuit in Arbuthnot v. State Automobile Insurance Association, 264 F.2d 260 (10 Cir. 1959), to be, for diversity purposes, a citizen of each state in which it has members or subscribers. Of course Mason v. American Express Co., *supra,* in which we held that a New York joint stock association was a citizen only of New York, might be authority for regarding United as possessing a "juridical personality" independent of its members, an approach which would have the effect here of making United a citizen of Texas as if a corporation incorporated there. In reaching the result in *Mason,* however, we distinguished *Arbuthnot* on the ground that the unincorporated association in *Arbuthnot* possessed fewer of the classical attributes of a corporation than the joint stock device of American Express possessed. See 334 F.2d at 402. More importantly, the precedential value of *Mason* was, at the least, seriously undermined by United Steelworkers v. R. H. Bouligny, Inc., *supra,* 382 U.S. at 152 n. 10, 86 S.Ct. 272, which, as we have stressed seems to represent a broad reaffirmance of the diversity rule traditionally applied to unincorporated associations.

Inasmuch as United should, for diversity jurisdictional purposes, be considered a resident of each state in which it has members, diversity jurisdiction would be defeated here, as we have explained, if United has even one member, other than Baer, who is a citizen of New York.[4] We think it inconceivable that it does not have such a member.[5]

Of course our order dismissing for lack of subject-matter jurisdiction will not have been anticipated by the parties, for both in the district court below and on this appeal, the issue of whether the district court had subject-matter jurisdiction has not been raised. Nevertheless, "[b]ecause of the limited jurisdic-

---

4. Inasmuch as it is incorrect, the allegation that United is a corporation organized under the laws of Texas does not bar our inquiry. And, the defendant, in its pleadings, as we have pointed out, put the plaintiff to her proof thereof.

5. In any event, the plaintiff, as we have stated above, was put on notice to inquire about this and failed to do so.

tion of the federal courts, . . . it is incumbent upon this court to raise the question of subject-matter jurisdiction *sua sponte* whenever it appears from the pleadings or otherwise that jurisdiction is lacking." John Birch Society v. National Broadcasting Co., 377 F.2d 194, 199 (2 Cir. 1967); see Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934); Wymard v. McCloskey & Co., 342 F.2d 495, 497 (3 Cir.), cert. denied, 382 U.S. 823, 86 S.Ct. 52, 15 L.Ed. 2d 68 (1965). Having raised the question of our own accord, we have examined the complaint and have discovered nothing there that negates the possibility that United should be considered a citizen of New York here because it has members, other than Baer, who are citizens of New York. "[T]he complaint in this action fails to show diversity of citizenship on its face, because it does not allege the citizenship of the members of [United]." Fine v. Philip Morris, Inc., 239 F.Supp. 361, 366 (SDNY 1964). Such a complaint, which on its face fails to negate the possibility that diversity does not exist, is defective. John Birch Society v. National Broadcasting Co., *supra*, 377 F.2d at 198; George v. Douglas Aircraft Co., 332 F.2d 73, 74 n. 1 (2 Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964); Fine v. Philip Morris, Inc., *supra* 239 F.Supp. at 364–366.

■■■ There is authority, upon which we choose to rely, however, for the proposition that a jurisdictionally defective complaint can be regarded as satisfactorily amended if the record as a whole establishes the existence of the required diversity of citizenship between the parties. See John Birch Society v. National Broadcasting Co., *supra*, 377 F.2d at 199; George v. Douglas Aircraft Co., *supra*, 332 F.2d at 74 n. 1; National Farmers Union Property & Casualty Co. v. Fisher, 284 F.2d 421, 422–423 (8 Cir. 1960). Accordingly, we have carefully studied the record in this case but have discovered no information there which would eliminate the possibility

that United has members, other than Baer, who are citizens of New York.

We therefore remand the case to the district court with directions to vacate its judgment and to dismiss the complaint for lack of subject-matter jurisdiction.