**LARWIN MORTGAGE INVESTORS**

v.

**RIVERDRIVE MALL, INC., et al.**

**Civ. A. No. 74-L-23.**

United States District Court,
S. D. Texas,
Laredo Division.
April 21, 1975.

98

John L. Estes, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for Larwin Mortgage Investors.

Carlos M. Zaffirini, Hall & Zaffirini, Laredo, Tex., for Riverdrive Mall, Inc.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

The origins of this action can be traced to a contract between Riverdrive Mall, Inc. (Riverdrive), and Herman J. Smith, General Contractors, Inc. (Smith), for the construction of a shopping center called Riverdrive Mall, in Laredo, Texas, and financing thereof by Larwin Mortgage Investors (Larwin), the Plaintiff herein. Larwin is a real estate investment trust created by a declaration of trust under the laws of the State of California with its principal place of business in California. The multitudinous Defendants all appear to be citizens of the State of Texas. Jurisdition is said to rest under 28 U.S.C., § 1332.

Larwin alleges that, upon the execution of two notes in the amount of $9,000,000 by Defendant Riverdrive, it advanced funds for the interim financing of the Mall. The notes are said to be secured by deeds of trust as well as the individual guarantees of the principals in Riverdrive. Contending that Riverdrive is now in default on the two notes, Larwin seeks judgment against Riverdrive and the guarantors for all sums advanced, together with interest and attorneys' fees.

Asserting that it is a third-party beneficiary to the construction contract between Riverdrive and Smith, calling for the construction of the Mall, Larwin maintains its action against Smith and its surety, Highlands Underwriters Insurance Company, for Smith's alleged failure to timely perform its construction contract.

Additional relief sought by Larwin involves lien priorities as to other secured creditors, rights under its deeds of trust, and recovery on letters of credit issued by Defendant International Bank of Commerce of Laredo.

Riverdrive, by its motion to dismiss, has questioned the existence of diversity jurisdiction, and takes the position that complete diversity must exist between all of Larwin's shareholders and the Defendants. Larwin's reply to Riverdrive's motion to dismiss urges the Court to treat Larwin as a juridical entity with citizenship in the State of California, or in the alternative, that, as in any active trust, only the residence of the trustees should be considered for diversity purposes.

Larwin has many of the attributes of a corporation (i. e., centralized management, limited liability, continuity of interest, transferability of shares); and in its first amended original complaint recently filed, Larwin admits that it is publicly held by several thousand shareholders and is listed on the New York Stock Exchange. So, according to Larwin, it should be treated like a corporation with citizenship in the state under whose laws it was created. Essentially, the Court is asked to conclude that the legal fiction applied to corporations—that

the citizenship of its members is presumed to be that of its state of incorporation[1]—should also be applied equally to Larwin, a real estate investment trust.

Chief among the cases relied upon by Larwin is Mason v. American Express Company, 334 F.2d 392 (2d Cir. 1964). In that case, the Court held that the Defendant, a New York joint stock association, displaying more characteristics of a corporation than an aggregation of individuals, should be treated as a citizen of its state of creation. It concluded that the traditional rule of Chapman v. Barney, 129 U.S. 677, 56 S.Ct. 333, 80 L.Ed. 370 (1889), that a joint stock association was itself incapable of possessing citizenship for diversity purposes, had been undercut by a series of decisions culminating in Puerto Rico v. Russell, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933). Russell treated a Puerto Rican business organization, a sociedad en comandita organized under the civil law of Puerto Rico, as a citizen for jurisdictional purposes, despite the fact that it was not incorporated in accordance with state statuory requirements. We think the Court in Mason misread Russell.

Subsequent to Mason, the Supreme Court decided in Steelworkers v. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), that for the purposes of diversity jurisdiction, the Defendant unincorporated labor union could not be treated as an entity. Citizenship of this unincorporated association was to be determined by the citizenship of each of its individual members. The Supreme Court found that the union's reliance on Russell, supra, was unwarranted. The Court stated, ". . . Russell does not furnish the precedent which Petitioner seeks." It suggested any change extending jurisdiction be addressed to Congress.[2] The Court explained the distinction between Russell and the Chapman v. Barney rule by saying the Russel decision was the result,

"of fitting an exotic creation of the civil law, the sociedad en comandita, into a federal scheme which knew it not."[3]

Believing that Bouligny foreclosed judicial recognition of unincorporated associations as juridical entities for diversity purposes, the Second Circuit, in Baer v. United Services Automobile Association, 503 F.2d 393, 396 (2d Cir. 1974), refused to consider the Defendant, an unincorporated reciprocal insurance association, as a corporation for diversity purposes.[4]

█ This Court, having carefully considered the authorities quoted, concludes that Larwin may not be treated as a corporation for the purpose of determining the existence of diversity jurisdiction. This decision, preordained by Bouligny, comports with the goal of the 1958 amendment to 28 U.S.C., § 1332, to reduce the caseload of federal courts.[5] To decide otherwise would be a usurpation of congressional power.

However, even though we have decided that Larwin should not be considered a corporate entity for diversity purposes, that is not the end of it. Larwin also contends that jurisdiction should be sustained because Larwin is a trust whose trustees are, and have been at all relevant times, citizens residing in California. Abundant authority exists for the proposition that for diversity purposes the citizenship of a trust will be determined by the citizenship of the trustees, the citizenship of the beneficiaries being considered immaterial. This was the case in Bullard v. City of Cisco, 290 U.S. 179, 54 S.Ct. 177, 78 L.

1. 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3630, at 836 (1975).

2. Bouligny, 382 U.S., at 150–151, 86 S.Ct., at 275.

3. Id., at 151, 86 S.Ct. at 275.

4. Baer was written by Judge Waterman, who was responsible for the Mason decision.

5. C. Wright, A. Miller & E. Cooper, supra, § 3630, at 846.

Ed. 254 (1933), where the Plaintiffs, who sued Defendant city to recover on its municipal bonds, held the bonds as trustees pursuant to a bondholders' agreement; and, in the cases where an administrator in a wrongful-death action is considered under state law to be a trustee of an express trust, Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931); and where Plaintiff trustee brought the action to enforce a deed of trust, Dodge v. Tulleys, 144 U.S. 451, 12 S.Ct. 728, 36 L.Ed. 501 (1892).

■ An examination of Larwin reveals that it is a creature of state law,[6] currently existing according to the terms of a First Declaration of Trust, which was filed on March 22, 1972, in Los Angeles, California. The Declaration of Trust specifies the format and purpose of Larwin. As a real estate investment trust (REIT), Larwin assumed its posture [7] to avail itself of tax advantages afforded to a qualified REIT.[8] While legal title to the trust assets rests exclusively in the trustees,[9] the shareholders (holders of beneficial interests) are empowered to remove trustees, with or without cause, and fill trustee vacancies.[10] Additionally, shareholders' consent must be obtained before the consummation of any transaction which involves the disposition of more than 50% of the trust estate. [11]

The problem of whether Larwin should be treated, for diversity purposes, as a trust or as an unincorporated association, appears analogous to that before the Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). There, the Court was faced with the method by which the Petitioner REIT should be taxed, as a trust or as a corporation (which included associations). The Court concluded that Congress had the power to tax as a corporation an unincorporated association in the form of a trust which transacted business as if it were incorporated. Among the differences between ordinary trusts and business trusts, Mr. Chief Justice Hughes observed that in the latter,

> "the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the *conduct of business and sharing its gains.*" [12]

The Court examined attributes of the business trust which closely resembled their corporate counterparts, and concluded that Congress intended that such enterprises should be taxed in the same fashion as corporations.[13]

As the *Morrissey* Court treated the business trust before it as an association for tax purposes, this Court concludes that Larwin is to be considered an unincorporated association, not an ordinary trust, for diversity purposes. This result is in accord with that in Fox v. Prudent Resources Trust, 382 F.Supp. 81, 92–93 (E.D.Pa.1974), in which the Defendant business trust was also considered to be unincorporated association for diversity purposes.[14]

This Court recognizes that this memorandum and order, if we are correct in

---

6. California Corporation Code, § 23000 et seq. (West Supp.1975).

7. Declaration of Trust, at ¶ 1.3, 5.1. [See Appendix]

8. See 26 U.S.C., §§ 856–858.

9. *Declaration of Trust*, at ¶ 6.2. [See Appendix]

10. *Id.*, at ¶ 2.3, 2.4. [See Appendix]

11. *Id.*, at ¶ 6.7. [See Appendix]

12. *Morrissey*, 296 U.S., at 357, 56 S.Ct., at 295.

13. *Id.*, at 359–360, 56 S.Ct. 289.

14. See Suchem, Inc. v. Central Aguirre Sugar Co., 52 F.R.D. 348, 354 (D. P.R.1971); *contra*, Trustees of the Barnett Mortgage Trust v. Shearn Moody, C.A. No. 74–G–58 (S.D.Tex., filed March 19, 1975) (opinion did not address jurisdictional issue); Houston Oil Co. v. Village Mills Co., 241 S.W. 122 (Tex.Comm.App.1922, holding approved).

our analysis, may create a barrier to federal court diversity jurisdiction of actions in which real estate investment trust litigants, such as Larwin, are involved. Be that as it may, the advantageous treatment of such publicly-held trusts under certain provisions of the Internal Revenue Code of the United States does not require the courts to treat any such trust as a traditional trust. This Court believes the holding in *Bouligny, Inc., supra*, is clear. It is the responsibility of Congress to change the citizenship status of such trusts for diversity purposes.

Concluding that the citizenship of Larwin is that of each of its shareholders, the Court finds that this action must be dismissed for want of subject matter jurisdiction. A final judgment of dismissal shall be entered accordingly.

A copy of this memorandum and order shall be furnished to the appropriate counsel.

## APPENDIX

[Pertinent portions of paragraphs referred to in "Index to First Restated Declaration of Trust of Larwin Mortgage Investors."]

### ARTICLE I

The Trust: Definitions

\* \* \* \* \* \*

1.3 *Nature of Trust.* The Trust is a real estate investment trust (also known as a business trust for real estate purposes) organized under the laws of the State of California. It is intended that the Trust shall carry on business as a "real estate investment trust" as described in the REIT Provisions of the Internal Revenue Code. The Trust is not intended to be, shall not be deemed to be, and shall not be treated as a general partnership, limited partnership, joint venture, corporation, or joint stock company or association that nothing herein shall preclude the Trust from being taxable as an association under the REIT Provisions of the Internal Revenue Code) nor shall the Trustees or

Shareholders or any of them for any purpose be, or be deemed to be treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Shareholders to the Trustees shall be solely that of beneficiaries of the Trust and their rights shall be limited to those conferred upon them by this Declaration.

\* \* \* \* \* \*

### ARTICLE II

Trustees

\* \* \* \* \* \*

2.3 *Resignation, Removal and Death of Trustees.* A Trustee may resign at any time by giving written notice in recordable form to the remaining Trustees at the principal office of the Trust. Such resignation shall take effect on the date such notice is given or at any later time specified in the notice without need for prior accounting. A Trustee may be removed at any time with or without cause by vote or consent of holders of a majority of the outstanding Shares entitled to vote thereon or with cause by all remaining Trustees. Upon the resignation or removal of any Trustees, or his otherwise ceasing to be a Trustee, \* \* \*.

2.4 *Vacancies.* If any or all the Trustees cease to be Trustees hereunder, whether by reason of resignation, removal, incapacity, death or otherwise, such event shall not terminate the Trust or affect its continuity. Until vacancies are filled, the remaining Trustee or Trustees (even though less than three (3) may exercise the powers of the Trustees hereunder. Vacancies (including vacancies created by increases in number) may be filled by the remaining Trustee or Trustees or by the vote or consent of holders of a majority of the outstanding Shares entitled to vote thereon. If at any time there shall be no Trustees in office, successor Trustees shall be elected by the Shareholders as provided in Section 6.7.

\* \* \* \* \* \*

**102**

## ARTICLE V

### Investment Policy

5.1 *General Statement of Policy.* While the Trustees are authorized pursuant to Article III to invest the Trust Estate in a wide variety of investments, it is the present intention of the Trustees to invest the major portion of the Trust Estate in Construction Loans, Development Loans and Mortgage Loans on residential, commercial and industrial Real Properties. In addition, a portion of the Trust Estate may be invested in the entire or participating ownership in Real Property which is income-producing or which at the time of acquisition the Trustees reasonably expect (by the development, improvement, construction, alteration, lease or otherwise) to become income-producing within a reasonable period of time.

The Trustees intend to make investments in such manner as will comply with the requirements of the Internal Revenue Code with respect to the composition of the investments and the derivation of the income of real estate investment trusts as defined in the REIT Provisions of the Internal Revenue Code; * * *.

\* \* \* \* \* \*

## ARTICLE VI

### The Shares and Shareholders

\* \* \* \* \* \*

6.2 *Legal Ownership of Trust Estate.* The legal ownership of the Trust Estate and the right to conduct the business of the Trust are vested exclusively in the Trustees and the Shareholders shall have no interest therein other than beneficial interest in the Trust conferred by their Shares issued hereunder and they shall have no right to compel any partition, division, dividend or distribution of the Trust or any of the Trust Estate.

\* \* \* \* \* \*

6.7 *Shareholders' Meetings.* * * * The affirmative vote at a meeting of Shareholders of the holders of a majority of all outstanding Shares shall be required to approve the principal terms of the transaction and the nature and amount of the consideration involving any sale, lease, exchange or other disposition of more than 50% of the Trust Estate. * * *.