CARLSBERG RESOURCES CORPORA-
TION, a corporation, trading as Carls-
berg Mobile Home Properties, Ltd.,—'72,
a limited partnership, Plaintiff,

v.

CAMBRIA SAVINGS AND LOAN ASSO-
CIATION, a State Savings and Loan
Association, et al., Defendants.

Civ. A. No. 75-902.

United States District Court,
W. D. Pennsylvania.

May 26, 1976.

Ray C. Stoner, Pittsburgh, Pa., for plain-
tiff.

Robert F. Hawk, Butler, Pa., for Cambria
Sav. & Loan.

Jerome M. Libenson, Pittsburgh, Pa., for
William Deemer.

Irwin B. Wedner, Pittsburgh, Pa., for
Ronald Eller, Forest Enterprises, Forest
Park.

John T. Richards, Jr., Pittsburgh, Pa., for
Geo. and Anne Henderson.

OPINION

MARSH, District Judge.

In this action, Carlsberg Resources Corpo-
ration, trading as Carlsberg Mobile Home
Properties, Ltd.,—'72, a limited partnership,
filed a complaint asserting that jurisdiction
is founded on diversity of citizenship of the
parties. See paragraph 12 of complaint.

■ It is alleged that all the defendants are citizens of Pennsylvania.[1] It is alleged that Carlsberg Resources Corporation is a corporate citizen of California having its principal place of business in that State, and is the general partner in Carlsberg Mobile Home Properties, Ltd.,—'72 (Carlsberg Ltd.) a limited partnership, having a place of business in California. This averment can have no jurisdictional meaning attached to it. It is not alleged that the limited partners are citizens of states other than Pennsylvania. Thus we hold that the complaint, unless amended, should be dismissed for lack of jurisdiction because it does not disclose that the action is between citizens of different states, 28 U.S.C. § 1332(a)(1); it does not disclose the citizenship of the limited partnership.

■ Although the jurisdictional issue presents policy factors, as we understand the law unincorporated associations are considered to be citizens of each state in which the association has members. *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Thomas v. Board of Trustees*, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160 (1904); *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900), involving a limited partnership; *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889), involving a joint stock company partnership; *Underwood v. Maloney*, 256 F.2d 334, 338 (3rd Cir. 1958); *Larwin Mortgage Investors v. Riverdrive Mall, Inc.*, 392 F.Supp. 97 (S.D.Texas 1975);[2] *Jim Walter Investors v. Empire-Madison, Inc.*, 401 F.Supp. 425 (N.D.Ga. 1975); *Fox v. Prudent Resources Trust*, 382 F.Supp. 81, 92–93 (E.D.Pa.1974), involving a limited and general partner of a New York limited partnership.

■ It is necessary for a district court to inquire *sua sponte* into the jurisdictional attributes of a case and to dismiss the complaint if subject matter jurisdiction is absent. Rule 12(h)(3), Fed.R.Civ.P.; *Rock Island Millwork Co. v. Hedges-Gough Lumber Co.*, 337 F.2d 24, 26–27 (8th Cir. 1964); *Underwood v. Maloney*, 256 F.2d 334, 340 (3rd Cir. 1958);[3] *McGahey v. Giant Food, Inc.*, 300 F.Supp. 475, 477 (D.Md.1969).

As stated in *Thomas v. Board of Trustees*:

"It is equally well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived." 195 U.S. at 211, 25 S.Ct. at 25, 49 L.Ed. at 164.

In light of the foregoing decisions, since it does not affirmatively appear that this court has diversity jurisdiction, it must be held that the court has no authority to take cognizance of it. *Thomas v. Board of Trustees, supra*, p. 214, 25 S.Ct. p. 26, 49 L.Ed. p. 165.

At the hearing on the motions,[4] we requested that counsel for the plaintiff produce a list of the limited partners together with their addresses. Counsel for the plaintiff submitted a copy of an amendment to the Certificate of Limited Partnership of Carlsberg Mobile Home Properties Ltd., —'72 and a list of all limited partners. The

---

1. It is not alleged that the defendant Cambria Savings and Loan Association is a Pennsylvania corporation with its principal place of business in Pennsylvania, 28 U.S.C. § 1332(c), but for present purposes we will assume it is.

2. Larwin, like Carlsberg Ltd., was a California real estate investment trust with its principal place of business in California and having several thousand shareholders.

3. In *Underwood*, Chief Judge Biggs stated: "It is desirable that jurisdictional questions be determined promptly to the end that long and costly trials may be avoided or restricted to the pertinent and material issues." 256 F.2d at 340.

4. The defendants, William P. Deemer and Anne H. Henderson, filed motions to dismiss. The defendant, Cambria Savings and Loan Association, also filed a motion to dismiss and a motion for summary judgment; the remaining defendants filed answers.

list discloses that out of more than 1,500 limited partners, approximately 38 partners have Pennsylvania addresses; plaintiff's brief admits the latter are Pennsylvania citizens. These documents disclose one general partner, Carlsberg Resources Corporation.[5]

In *Donroy, Ltd. v. United States*, 301 F.2d 200, 206–207 (9th Cir. 1962), involving a similar California partnership, the Court of Appeals stated:

"In the State of California, . . . a partnership, unlike a corporation, is considered to be not a legal entity, but an association of individuals. Our attention has not been called to any authority to the effect that a limited partnership in this respect is any different from a general partnership.

Consistently with this concept, both the United States and Canada look, not to the partnership as such, but to the distributive income of the individual partners for income tax purposes.

To say that for practical purposes a limited partner in a partnership is no different from an investing shareholder in a corporation or from the corporate owner of a subsidiary corporation, overlooks the fact that in these latter instances the corporate entities are taxed for and pay income taxes while a partnership, whether limited or general, does not.

Under this concept of partnership as an association of individuals, it follows that each partner, whether general or limited has an interest as such in the assets and the profits of the partnership, . . . .."

Plaintiff emphasizes that the citizenship of the general partner is controlling, citing the Uniform Partnership Act § 26, and the Pennsylvania Rules of Civil Procedure, rule 2126 *et seq.* which state that for purposes of litigation in the state courts, a "partner" means only a general partner or a limited partner who has become subject to liability as a general partner.

Of course, the Uniform Partnership Act and the Pennsylvania Rules of Civil Procedure have nothing whatsoever to do with diversity jurisdiction in a federal court. To the contrary, as was held in *Chapman v. Barney*, 129 U.S. 677, 682, 9 S.Ct. 426, 428, 32 L.Ed. 800, 801 (1889), a joint stock company is "a mere partnership;" and although it may be authorized by state law to bring a suit in the name of its president [general partner], "that fact cannot give the company [limited partnership] power, by that name to sue in a federal court. The company may have been organized under the laws of the State of New York [California], and may be doing business in that state, and yet all the members of it may not be citizens of that state." [6]

At this point it is pertinent to call attention to the fact that since World War II the diversity of citizenship cases in district courts have increased tremendously. In 1958, in an effort to meet the heavy increase in caseload, Congress enacted § 1332(c) of Title 28 U.S.C. and reduced the number of cases involving corporations which came into Federal District Court on the fictional premise that a diversity of citizenship existed.[7] Now, for many corpo-

---

**5.** It was further disclosed that the limited partners contributed cash totalling more than 99% of the total capital invested in the partnership; net profits and losses resulting from major capital transactions by the partnership are allocated entirely to the limited partners; net profits and losses resulting from the partnership operation otherwise are allocated on the basis of 95% to the limited partners and 5% to the general partner.

**6.** Although the tendency in many states has been to confer capacity to sue and be sued as entities upon unincorporated associations, citizenship separate and distinct from its members has been denied in virtually all cases. See

*United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). However, there is dictum to the contrary. *Van Sant v. American Express Co.*, 169 F.2d 355 (3rd Cir. 1947). But see *Underwood v. Maloney*, 256 F.2d 334 (3rd Cir. 1958).

**7.** Senate Report No. 1830 (July 11, 1958) U.S. Code Cong. and Admin.News, 85th Congress 2d Session, pp. 3099, 3101.

Current reformation proposals are in favor of severely limiting diversity jurisdiction. See Report of Chief Justice Burger, 62 A.B.A.J., pp. 189, 190 (1976); and remarks of Solicitor Gen-

rations the statute provides dual citizenship, i.e., a citizen of the state of its incorporation and also of the state where it has its principal place of business. But a limited partnership cannot be equated with a corporation in that it is incapable of the dual citizenship conferred on the latter by amended § .1332(c). See *R. H. Bouligny, Inc. v. United Steelworkers of America*, 336 F.2d 160, 164 (4th Cir. 1964), *aff'd* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Obviously Congress did not intend to endow unincorporated associations with citizenship as it did corporations; nor has it done so since 1958.

Despite the cases cited by the plaintiff, i.e., *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir. 1966);[8] *C. P. Robinson Const. Co. v. National Corp. for Housing Partnerships*, 375 F.Supp. 446 (M.D.N.C. 1974);[9] *Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 709 (E.D.N.Y.1972),[10] we think *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889) and *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 150–151, 86 S.Ct. 272, 274–75, 15 L.Ed.2d 217, 220–21 (1965) firmly establish that the courts are not the appropriate forum for extending the specific diversity jurisdiction limitations spelled out by Congress in 28 U.S.C. § 1332(c), which expressly applies to corporations only.

In *Chapman*, the Supreme Court laid down the rule with respect to unincorporated associations. It held that, for purposes of diversity jurisdiction, the actual citizenship of each of the members of an unincorporated association (in that case, a joint stock company) is controlling. In *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. at 454–455, 20 S.Ct. at 692, 44 L.Ed. at 844, the Court reaffirmed its holding:

"This court does not hold that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a state within the meaning of the Constitution.

\* \* \* \* \* \*

But the express company cannot be a *citizen* of New York, within the meaning of the statutes regulating jurisdiction, unless it be a corporation."

The Court, referring to the rule with respect to corporations, made it clear that the rule was not to be extended:

"That a limited partnership association created under the Pennsylvania statute may be described as a '*quasi* corporation,' having some of the characteristics of a corporation, or as a 'new artificial person,' is not a sufficient reason for regarding it as a corporation within the jurisdictional rule heretofore adverted to. *That rule must not be extended. We are unwilling to extend it so as to embrace partnership associations.*" (Emphasis added).

It seems certain that it is for Congress, not the courts, to change the rule. *Bouligny, supra*, 382 U.S. at 153, 86 S.Ct. at 276, 15 L.Ed.2d at 222.

In *Colonial Realty Corp. v. Bache & Co., supra*, principally relied on by the plaintiff, the defendant Bache & Co. was a limited partnership organized pursuant to New York Partnership law and engaged in securities brokerage in New York City. The plaintiff was a Delaware corporation with its principal place of business in Pennsylvania. It appears that there was diversity between the plaintiff corporation and all the general partners of the defendant partnership, and only one limited partner was a citizen of Delaware. It was held diversity

eral Robert H. Bork in report on National Conference On Administration of Justice, 44 U.S. L.W. 2487, 2489–90 (April 20, 1976).

**8.** It seems that the Second Circuit is now in accord with the decision in *Bouligny* with respect to a Texas "inter-insurance exchange" whose members are treated as limited partners. *Baer v. United Services Automobile Assn.*, 503 F.2d 393 (2d Cir. 1974).

**9.** *C. P. Robinson Const. Co.*, in which the general partners of Bingham Heights Limited Partnership, citizens of North Carolina sued Bingham's sole limited partner, a citizen of the District of Columbia, relies on *Colonial*, and we think it contrary to *Bouligny* and *Baer* cited in fn. 8.

**10.** We do not think *Erving* can be reconciled with *Baer*, cited in fn. 8.

was not destroyed. *Colonial* differs from the case at hand in that no liability whatsoever attached to the one limited partner; in practical effect he was not a party defendant in the case; whereas, in the case *sub judice, the plaintiff is the partnership,* having only one general partner and over 1,500 limited partners, citizens of many states, all of whom stand to profit from a money verdict in favor of the partnership. See fn. 5. All the partners in Carlsberg Ltd. are financially interested in the outcome of this case.

## CARLSBERG, LTD. v. CAMBRIA

■ Even if the plaintiff Carlsberg were correct as to the jurisdictional question, it is also our opinion that the motions of Cambria Savings and Loan Association (Cambria) for summary judgment and to dismiss for failure to state a claim, treated together as a motion for summary judgment pursuant to Rule 12(b), Fed.R.Civ.P., would be granted. Accepting as true the facts set forth in the complaint and plaintiff's affidavits and exhibits, we find that there is no genuine issue of material fact and that defendant Cambria would be entitled to judgment as a matter of law. These facts are as follows:

On May 12, 1972, defendant Cambria entered into a construction loan agreement with defendant Forest Park, a partnership composed of defendants George B. Henderson and Ronald N. Eller. Cambria agreed to lend $850,000 to Forest Park for construction of improvements on a parcel of land which Forest Park owned and planned to develop into a 300-lot mobile home park. Cambria was to advance the loan money for construction costs upon certification by a registered architect. As security for the construction loan, Forest Park executed a mortgage on the land to Cambria. The construction was to be completed within 20 months from the date of the recording of the mortgage unless the time was extended by Cambria. In July, the first request for loan funds to reimburse Forest Park for construction expenditures was submitted to

Cambria, certified by defendant William P. Deemer, a registered professional engineer.[11] Subsequent requests for advances, certified by Deemer, were submitted each month from August through November, 1972.

On December 20, 1972, plaintiff Carlsberg Mobile Home Properties, Ltd.,—'72 (Carlsberg) purchased the property from Forest Park for a sum of $1,253,489, of which $55,000 was for the land and $1,180,389 was for the improvements. Carlsberg did not assume the earlier mortgage of Forest Park to Cambria. Concurrent with this purchase, the property was leased back to Forest Park. According to the lease agreement, construction work had already been completed on 75 of the mobile home lots; Forest Park was to pay a minimum monthly rental of $12,786.83 to Carlsberg and was obligated to complete the remaining work on the mobile home park by December 15, 1973.

By letter dated December 29, 1972, addressed to Attorney John T. Richards, attorney for Henderson and Eller, Cambria gave approval to the sale and transfer of the Forest Park property by Henderson and Eller to Carlsberg. The letter stated:

"The property being sold to CMHP, Ltd., is now encumbered by a $850,000.00 mortgage to this Association executed on May 12, 1972 and recorded in Butler County, Pennsylvania in MBV 541, Page 66. This mortgage provides for payments of $7,400.00 a month beginning with January 1, 1974 to cover 9-½% annual interest rate and principal. Provisions for escrowing monthly installments for taxes and insurance premiums are in addition to the $7,400.00 amortization loan payments.

This is a construction development loan of which $463,629.40 has been advanced to this date. We have a balance of $366,- 370.60 for future disbursements upon proper inspections certifying as to the progress made with the development of the mobile home park."

---

11. Defendant Deemer was hired by Forest Park as the civil engineer for the project. There is no indication that there was an architect hired for construction of the improvements.

Henderson and Eller, as tenants in possession on Carlsberg's property during 1973 and 1974, were operating the completed portion of the Forest Park mobile home park and, as contractors, were developing the remainder of the mobile home park. Forest Enterprises, Inc., a corporation associated with Henderson and Eller, apparently undertook to assist in the construction of the park. Mrs. Anne Henderson served in handling the books and depositing the funds associated with Forest Enterprises and Forest Park, including the collection of the rentals from the park and the receipts from the construction loan. Throughout 1973 and the early months of 1974, Cambria disbursed funds based upon requests certified by defendant George P. Deemer, the registered professional engineer hired by Forest Park.

In May, 1974, Carlsberg learned that the certificates had exaggerated the amount of construction actually completed. Carlsberg thereupon visited the park site and apparently determined that although approximately 80% of the funds (approximately $680,000) had been disbursed by Cambria, only 50% of the construction had been completed. The funds remaining in the loan account were insufficient to complete the construction of the mobile home park in accordance with the plans and specifications approved under the loan agreement.

By this time in early 1974, Forest Park was in default under the agreement due to its failure to make certain payments under the loan. Forest Park sought and received an extension of mortgage lien from Cambria. Carlsberg, in late May, 1974, notified Cambria that Eller and Henderson had not sent certain lease payments to Carlsberg. Cambria later stopped further disbursements on the project and shortly thereafter accelerated the balance due on the note and instituted legal proceedings against the park by foreclosing on the existing encumbrance. A foreclosure sale of the park was made and Cambria purchased the park property in early 1975.

In its complaint, Carlsberg alleges that in furtherance of a scheme and conspiracy to defraud the plaintiff, defendants Forest Park, George Henderson, Ronald Eller, Anne Henderson, Forest Enterprises, Inc., and William Deemer submitted to defendant Cambria requests for loan advances which were knowingly fraudulent, false and inaccurate certifications of the work completed at the mobile home park. Plaintiff argues that Cambria owed a duty to the plaintiff to use reasonable care in investigating, in certifying and in disbursing the construction loan funds so as to assure that the funds were used for the purpose of constructing the mobile home park. Plaintiff alleges that as a result of negligence by Cambria, defendants Henderson and Eller were able to draw most of the loan proceeds without completing construction of the mobile home park.

Viewing the facts alleged in the light most favorable to plaintiff Carlsberg, it appears that Carlsberg has failed to state a claim against defendant Cambria and that Cambria is entitled to prevail as a matter of law. Even if it is true, as plaintiff charges, that the advance requests were knowingly false and fraudulent and were prepared as part of a scheme among the other defendants to defraud Carlsberg (and Cambria), there is still no liability for negligence on the part of Cambria. The question is not simply whether such a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. *See* opinion of Chief Justice Weintraub in *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 186 A.2d 291, 293 (1962).

■ An actor generally has no duty to use care to prevent harm to another through the criminal acts of third parties not subject to his control. The exception to this rule is a defendant who expressly assumes such a duty. *See Tormo v. Yormark*, 398 F.Supp. 1159, 1169 (D.N.J.1975); *Le Lievre and Dennes v. Gould*, 1 Q.B. 491 (1893). There is no allegation of such an express assumption of duty by Cambria. Even with respect to another lienholder, Cambria could be charged with such a duty only after making specific statements accepting a responsibility to make inspections

of the property on behalf of the other lien-holder. *In Re George W. Hyde Building & Loan Ass'n*, 137 Pa.Super. 415, 9 A.2d 200, 201 (1939). If Carlsberg is to claim that it was lulled into a false sense of security thinking that Cambria would act on behalf of Carlsberg to inspect the improvements being made on Carlsberg's land by Carlsberg's tenant, there must first be an allegation that Cambria expressly assumed such a responsibility. The plaintiff's complaint makes no such allegation, but states simply that Carlsberg relied on the procedure for disbursement of funds as set up in the loan agreement between Cambria and Forest Park. The terms of the loan agreement were summarized by Cambria in its letter of December 29, 1972, to an attorney for Forest Park stating that the mortgagee had approved the sale to Carlsberg. Plaintiff Carlsberg would have this letter read as an indication of Cambria's intention to inspect on behalf of Carlsberg. The letter, however, does not expressly assume any such responsibility. The letter does indicate that $463,629.40 (or more than 55%) of the loan had already been advanced. Accepting as true Carlsberg's claim that when it did inspect the property in 1974, only 50% of the construction had been completed, it would appear that false certification statements had already been submitted before Carlsberg purchased the property in December, 1972.

The plaintiff relies upon *Housing Mortgage Corp. v. Allied Construction, Inc.*, 374 Pa. 312, 97 A.2d 802 (1953) which holds that after notice of the existence of a junior lien, the senior mortgagee will not be protected in making further advances under his mortgage unless he is under a binding obligation to make such advances. But that ruling is not relevant to the instant situation where a non-lienholder has brought an action for negligence against the mortgagee. The applicable law in this situation is the well-settled rule that the question of liability for negligence cannot arise at all until it is established that the party who has been negligent owed some duty to the person who seeks to make him liable for negligence. As the court noted in *Suchomajcz v.*

*Hummel Chemical Co.*, 385 F.Supp. 1387, 1392 (E.D.Pa.1974):

> "Ordinarily, summary judgment is not granted in negligence cases. . . . When I find, however, as a matter of law, that defendant owed no legal duty to plaintiffs and no other theory of liability is applicable, I must grant defendant's motion. *Bland v. Norfolk & S. R. R.*, 406 F.2d 863, 866 (4th Cir. 1969)."

Accepting all of the plaintiff's allegations as true, plaintiff Carlsberg has nevertheless failed to show that Cambria owed Carlsberg any duty, and thus Carlsberg's negligence action against Cambria is insufficient as a matter of law.

An appropriate order will be entered.