**LINCOLN ASSOCIATES, INC.,**
**a corporation**

**v.**

**GREAT AMERICAN MORTGAGE INVESTORS, a Real Estate Investment Trust, et al.**

**No. CA 3–76–0553–C.**

United States District Court, N. D. Texas, Dallas Division.

June 24, 1976.

Roger D. Marshall and Carl E. Glaze, Freytag & Marshall, Dallas, Tex., for plaintiff.

Sam Day, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, Tex., for Great Am. Mortg. Investors.

Ernest E. Figari, Jr., Merrill L. Hartman and David P. Seikel of Hewett, Johnson, Swanson & Barbee, Dallas, Tex. and L. Robert Lieb, Lieb, Wolff & Samson, West Orange, N. J., for Institutional Investors Trust.

## MEMORANDUM OPINION AND ORDER

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff, a Texas corporation with its principal office and place of business in Dallas, Texas, brought this suit against defendants in the 191st District Court of Dallas County, Texas, seeking specific performance of a Note Purchase Agreement by defendants, and alternatively damages for alleged breach of such agreement. In addition, plaintiff seeks the appointment of a receiver for the assets of Great American Mortgage Investors (GAMI), and Institutional Investors Trust (IIT), and an injunction against all defendants from disbursing or dissipating the remaining assets of defendants.

IIT removed the suit to federal court on April 19, 1976, on the basis of diversity jurisdiction.[1] Plaintiff filed a Motion to Remand the case to state court, and upon considering that motion the Court was of the opinion that diversity of citizenship did not exist. On May 5, 1976, the Court entered an order remanding this cause to the state court based on lack of subject matter

---

1. See 28 U.S.C. § 1441(b) & (c); 28 U.S.C. § 1332.

jurisdiction of this Court. On May 7, 1976, IIT requested and was granted a stay of the order of remand for the purpose of presenting briefs and argument in opposition to the remand. After having considered the briefs of the parties and the oral arguments heard on June 7, 1976, the Court is of the opinion that the following Order should be entered.

■ It is a fundamental principle that federal courts are courts of limited jurisdiction and are empowered to hear only those cases specifically authorized to be heard by a jurisdictional grant from Congress pursuant to Article III of the Constitution.

> The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of "business that intrinsically belongs to the state courts," in order to keep them free for their distinctive federal business.

*Indianapolis v. Chase National Bank*, 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941). See also *Wright, Federal Courts* 15 (2d ed. 1970). Obviously, if jurisdiction is vested in the federal courts, then neither a crowded docket nor the possibility of a more expeditious resolution by the state court nor anything else can deprive litigants of a federal forum. *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542, 44 L.W. 4085 (1976). On the other hand,

> [t]he policy of the statute [conferring diversity jurisdiction upon the district courts] calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution . . . . . Due regard for the rightful independence

of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). If the facts in this case do not fall within the precise bounds of the grant of diversity jurisdiction in 28 U.S.C. § 1332, then the Court simply cannot entertain this case.

■ The issue before the Court is the determination of the citizenship of IIT for diversity purposes. This determination is strictly a matter of federal law. *Stifel v. Hopkins*, 477 F.2d 1116 (6th Cir. 1973). IIT contends that it should be treated as an ordinary trust, so that its citizenship is determined by reference to the citizenship of its trustees. See *Bullard v. City of Cisco*, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933). Plaintiff contends that IIT should be treated as an unincorporated association, whose citizenship is determined by looking to that of IIT's individual shareholders. IIT also contends that in the event the Court finds that IIT is an unincorporated association for diversity purposes, then the Court should "characterize" it as a limited partnership or as a corporation for purposes of determining its citizenship. A resolution of the issue of IIT's citizenship turns on a determination of the nature of the business enterprise of IIT.

■ IIT is a Massachusetts real estate trust,[2] organized under a Declaration of Trust dated May 22, 1970. IIT is an investment vehicle which has transferable shares publicly traded on the New York Stock Exchange[3] and is subject to regulation by the Securities and Exchange Commission. IIT's shareholders have the right to elect trustees,[4] and to remove them with or without cause.[5] IIT's trustees have the power to invest in or purchase real estate assets

---

**2.** Declaration of Trust, Section 1.3.

**3.** IIT has the burden of establishing the existence of diversity jurisdiction in this case, and it has never maintained that it does not have shareholders who are citizens of Texas.

**4.** Declaration of Trust, Section 10.2.

**5.** Declaration of Trust, Section 10.4.

and any other real and personal property.[6] Distributions of net profits, surplus, capital and assets are made to the shareholders from time to time as the trustees deem proper.[7] The Declaration of Trust requires the consent of its shareholders for certain transactions.[8] Annual and special shareholders' meetings are to be held,[9] and the Declaration of Trust is subject to termination or amendment by vote of two-thirds of the shareholders.[10] Finally, IIT was organized so that it can elect to be treated as a Real Estate Investment Trust (REIT) for tax purposes under Sections 856, 857, and 858 of the Internal Revenue Code of 1954.

With regard to IIT's contention that for diversity purposes it should be treated as an ordinary trust rather than as an unincorporated association, this Court is guided by the Supreme Court's articulation of the difference between an ordinary trust and a business trust or association:

> The nature and purpose of the cooperative undertaking will differentiate [the association] from an ordinary trust. In what are called "business trusts," the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management and sale of properties . . . where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement,

seek to share the advantages of a union of their interests in the common enterprise.

*Morrissey v. Commissioner of Internal Revenue*, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935).

When one considers the above-mentioned characteristics of IIT in light of the Supreme Court's analysis, it becomes manifestly clear that IIT is not an ordinary trust. It is a business trust or association, and, in view of the mandate to narrowly construe and confine diversity jurisdiction,[11] this Court cannot treat it as an ordinary trust for diversity purposes. Rather, it must be treated as an unincorporated association.

This result is in accord with that in *Larwin Mortgage Investors v. Riverside Mall, Inc.*, 392 F.Supp. 97 (S.D.Tex., 1975), which dealt with the specific issue before this Court, that is, the treatment of a business or real estate trust for diversity purposes.[12] Relying on *Morrissey, supra*, which held that business trusts should be taxed as unincorporated associations rather than as ordinary trusts, the court held that a business trust which qualified for tax treatment as an REIT is to be treated for diversity purposes as an unincorporated association.

IIT maintains that the *Morrissey-Larwin* reasoning is inapplicable to this case since IIT has elected not to qualify as an REIT for tax purposes at the present time.[13] This argument is without merit. The issue before the Court turns not upon an election by IIT under the tax code which results in its being a "real estate trust" rather than a "real estate investment trust," but rather upon the intrinsic nature and purpose of IIT as a business enterprise. The *Morrissey*

---

**6.** Declaration of Trust, Section 2.1.

**7.** Declaration of Trust, Section 11.1.

**8.** Section 13.2. These include merger or consolidation with any other organization, and the sale of assets.

**9.** Declaration of Trust, Section 9.1.

**10.** Declaration of Trust, Section 13.1.

**11.** See 1 Barron & Holtzoff (Wright ed.), § 26 n. 93.4, and cases discussed above.

**12.** In *Larwin* the trust was qualifying as a REIT at the time suit was brought.

**13.** The affairs of IIT were originally conducted in such a manner as to qualify IIT as a REIT under the tax code. On January 29, 1976, the Trustees passed a resolution electing not to so qualify for the fiscal years ending January 31, 1976, and January 31, 1977.

analysis of types of entities and enterprises is clearly applicable to the case at bar, and dictates IIT's treatment as an unincorporated association. Nothing in that opinion indicates that the Supreme Court would treat a business trust any differently for purposes of determining diversity jurisdiction.

■ IIT next argues that if the Court decides to treat it as an unincorporated association for diversity purposes, then the Court should "characterize" it as a limited partnership or as a corporation for purposes of determining its citizenship. The Supreme Court's decision in *Steelworkers v. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) precludes this Court from giving IIT a fictional citizenship once it is determined that IIT is an unincorporated association for diversity purposes. *Bouligny* mandates that the citizenship of an unincorporated association is the citizenship of each of its members. This rule obtains even when state law and Federal Rule 17(b) permit the association to sue or be sued as an entity and declare that it is to be treated as if it were a corporation. See *Wright-Miller-Cooper, Federal Practice and Procedure*, § 3630 at 840–841, and cases cited therein.

IIT maintains that it is unlike a labor union, the entity before the court in *Bouligny*, and therefore that case is inapposite. This Court does not agree. Throughout the opinion in *Bouligny* the court referred to "labor unions and other unincorporated associations," indicating that its analysis was not limited to labor unions but rather was applicable to all forms of unincorporated associations. See *Wright-Miller-Cooper, ibid*, § 3630 at 849. Moreover, the courts which have considered the issue of citizenship of "other unincorporated associations" subsequent to *Bouligny* have found it to be the controlling case.

In *Baer v. United Services Automobile Association*, 503 F.2d 393 (2d Cir. 1974), the Second Circuit Court of Appeals held that an unincorporated association, a reciprocal insurance association in that case, should be considered as a citizen of each state in which the association had members. Discussing *Bouligny*, the Second Circuit noted:

> Yet, despite this acknowledgement of the significant similarity between corporations and certain other types of associations, the Court was unwilling to tamper with the existing statutory rule of 28 U.S.C. § 1332(c), which by its express terms applies only to corporations . . . . . *Bouligny* appears to have been intended to truncate any further enlargement of the clear language of 28 U.S.C. § 1332(c) and to disapprove any judicial enlargement which has already occurred.

*Baer, supra*, 503 F.2d 393, 396.

Citing *Bouligny* and *Baer*, the *Larwin* court refused to deviate from this rule when dealing with an REIT. Other cases in which courts have adhered to the *Bouligny* reasoning are *Jett v. Phillips & Associates*, 439 F.2d 987 (10th Cir. 1971) (defendant an unincorporated association); *Fox v. Prudent Resources Trust*, 382 F.Supp. 81 (E.D.Pa., 1974) (defendant a New York business trust); *Suchem, Inc. v. Central Aguirre Sugar Co.*, 52 F.R.D. 348 (D.P.R. 1971) (defendant a Massachusetts business trust); *Saul v. Farnale, Inc.*, CA 74–H–128 (S.D.Tex., July 8, 1975) (plaintiff a REIT); and *Risk v. Jones*, CA–75–97A (N.D.Ga., June 19, 1975) (defendant a Louisiana REIT).

*Pavlovschak v. Lewis*, 274 F.2d 523 (3rd Cir. 1959), cited by IIT in its brief in opposition to remand, does not mandate a different result. The defendant, United Mine Workers of America Welfare and Retirement Fund, was an organization composed of three members, who were called "trustees." The court noted that Pennsylvania treated "this body of three as an unincorporated association." 274 F.2d 523, 524, footnote 1. The court held that, for diversity purposes, the citizenship of the organization would be the citizenship of each of the members. Thus the court was following the traditional rule for determining the citizenship of unincorporated associations.

The cases of *Trustees of the Barnett Mortgage Trust v. Shearn Moody*, CA 74–

G–58 (S.D.Tex., March 19, 1976), and *Willowood Condominium Ass'n, Inc. v. HNC Realty Co.*, 531 F.2d 1249 (5th Cir. 1976), cited by IIT in its brief, are not authoritative with respect to the issue at bar. It appears from the opinions in these cases that neither court was cognizant of the jurisdictional problem existing with real estate trusts, since neither court addressed the jurisdictional issue. For this reason the Court does not feel bound by these decisions.

■ In summary, IIT cannot, consistent with Supreme Court authority, be treated as an ordinary trust, a limited partnership, or a corporation. IIT is, for diversity purposes, an unincorporated association, the citizenship of which is determined by that of its individual shareholders.

■ As in the *Bouligny* case, this Court has heard ingenious and appealing arguments for giving entity treatment to a business trust or association, or for characterizing it as something it is not for purposes of diversity jurisdiction. The Supreme Court, mindful of the principle of limited jurisdiction of federal courts, concluded that "pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts." *Bouligny, supra,* 382 U.S. 145, 150–151, 86 S.Ct. 272, 275, 15 L.Ed.2d 217. This Court must also give the same advice.

Since diversity of citizenship does not exist, and no other jurisdictional base is alleged, this case must be remanded to state court for lack of subject matter jurisdiction.