[Criminal No. 639.   Filed June 13, 1927.]

[256  Pac.  1048.]

P. K. LEWIS, Appellant, v. STATE, Respondent.

Messrs. Struckmeyer, Jennings & Strouss, and Mr. George Darnell, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

LOCKWOOD, J.—An information was filed against P. K. Lewis under the provisions of section 108, Penal Code of 1913, which reads as follows:

"108. Every person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office, within this state which instrument, if genuine, might be filed or registered, or recorded under any law of this state or of the United States, is guilty of felony."

The nature of the instrument as set forth in the information was " . . . an application for a loan of money from those certain permanent funds of the state of Arizona, created by and referred to in that certain statute of the state of Arizona known as chapter 5 of the Second Special Session, Laws of Arizona for the year 1915, and acts amendatory thereof, together with the three affidavits which by the provisions of chapter 95 of the Session Laws of Arizona for the year 1919 are prescribed to accompany said application, . . . " which documents were alleged to have been filed in the office of the state treasurer. This application was for a loan from the state of Arizona to K. G. Freeland and Ruth L. Freeland, his wife, in the amount of $5,000, and ostensibly signed by them, and to it were attached affidavits purporting to have been subscribed and sworn to by W. M. Ellis, H. C. Miller and T. F. Fagan. It was the state's contention that Ruth Freeland's signature to the application had been forged, and that Ellis and Miller had neither signed nor sworn to the affidavits. The case was tried before a jury, which returned a verdict of guilty, and defendant, after the usual motion for new trial was made and denied, appealed to this court.

There are some nine assignments of error which we will consider in the manner which seems ad-

visable. The first two raise the question as to whether or not the application and affidavits accompanying it are an "instrument" within the meaning of section 108, *supra*. This section first appeared in our laws as section 113, Penal Code of 1901, and was copied *verbatim* from section 115, Penal Code of California. The latter section has never been construed by the Supreme Court of California, but the district court of appeals of the first district of that state in *People* v. *Fraser*, 23 Cal. App. 82, 137 Pac. 276, has, since our adoption of the section, held the term "instrument" therein means only "an agreement expressed in writing, signed and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty."

In so determining the court relied upon a number of cases decided by the Supreme Court of California construing various provisions of the Civil Code of that state which used the term "instrument," and particularly in the case of *Hoag* v. *Howard*, 55 Cal. 564.

It is the general rule that when we take a statute from a sister state we take it with the interpretation previously placed upon it by the court of last resort of that state. This, however, is not an absolute rule, and if we think the construction so given is not consonant with common sense, reason, and our public policy, we are not absolutely bound to accept it. *Phoenix Title & Trust Co.* v. *Old Dominion Co.*, 31 Ariz. 324, 253 Pac. 435; *Kingsbury* v. *State*, 27 Ariz. 289, 232 Pac. 887. Still less are we bound when the decision is one of an intermediate appellate court, and rendered after we have adopted the statute. *Elias* v. *Territory*, 9 Ariz. 1, 11 Ann. Cas. 1153, 76 Pac. 605; *Germania L. Ins. Co.* v. *Ross-Lewin*, 24 Colo. 43, 65 Am. St. Rep. 215, 51 Pac. 488; *Harden-*

*bergh* v. *Ray,* 151 U. S. 112, 38 L. Ed. 93, 14 Sup. Ct. Rep. 305.

We therefore consider the question on its merits. The term "instrument" when used in law always imports a writing unless it is expressly stated to be otherwise. But the term is not necessarily confined to any definite class of legal documents. 32 C. J. 945. It is generally necessary to resort to the context or circumstances attending the use of the word in order to know to what it refers. The application described in the information is obviously a written document and thus within the broadest sense an "instrument." Is it, however, one within the meaning of the particular section on which the information is based? It is apparent that the section does not of itself place any limit on the kind of instrument except that it be one which "might be filed or registered or recorded under any law of this state." Chapter 95 of the Session Laws of 1919 provides:

"All applications for loans on farm lands shall be made on blank forms, to be prepared and furnished by the state treasurer, and shall be filed with the state treasurer, provided, that no application for a loan shall be accepted for filing by the state treasurer unless such application is accompanied by the sworn statement of three disinterested owners of land situated within the county in which the land offered as security for the loan lies, who shall set forth in said statement their estimate of the actual cash value of the land offered together with such other information as may be required by the rules and regulations to be adopted by the state treasurer and commissioner."

That the office of the state treasurer is a public office is of course plain, and the statute not only permits but requires that applications like the one in question must be filed before a loan is made, and that they shall not be accepted for filing unless the sworn statement of three other parties accompanies them. The application, therefore, comes within the

letter of section 108, *supra.* But not only does it do this, but in our opinion it is also within the spirit and the purpose of the statute. The whole object of all laws which require or permit instruments to be filed, registered, or recorded in any public office is that the general public, if interested in the subject matter of the instrument may proceed to the proper office, and if therein they find an instrument duly filed, registered, or recorded, they may and must act with the presumption that such an instrument is indeed in existence and is genuine, and govern their affairs accordingly.

The very fact that the state has specified an instrument may or shall be filed, registered, or recorded is evidence that in its public policy it deems it important enough for the general good of its citizens that a place and a manner be provided where the existence of the instrument may be established, and we think that section 108, *supra,* was passed for the express purpose of preventing the filing or recording of any false instrument no matter what its nature, if that instrument was of a character which the state considered important enough to make the instrument a public record.

We have examined the cases cited by the defendant on this point. They are either based on statutory provisions which show on their face that the term "instrument" is intended to be limited to some particular class of document, or else merely follow the earlier cases without noting the difference in the context of the statute involved. We therefore hold that the application in question is an "instrument" within the terms of section 108, *supra,* and the information states a public offense.

The next three assignments of error deal with the admission of certain evidence as to the genuineness of the signatures attached to two of the three sworn statements accompanying the application for the

loan. Briefly stated, it is the contention of defendant that the statute does not require that these statements be signed, but merely sworn to; that therefore any charge the instrument in question was forged, so far as the statements were concerned, must be directed to the oath and not the signature, and it was immaterial as to whether the signatures were made by the parties whose names appeared as the affiants or not; that the certificate of the notary to the statements is by paragraph 140, Revised Statutes of Arizona of 1913, Civil Code, made presumptive evidence of the things contained therein, and therefore any effort to establish a forged statement must be by showing that the certificate of the notary as to the *oath* was untrue.

We agree with defendant in all of the above statements of legal principles. Chapter 95, *supra,* requires a "sworn statement" of the three disinterested land owners, but nowhere expressly provides that the statement must be signed as well. The general rule is that an affidavit is valid without signature, unless the latter is expressly required. *Clifton Bank* v. *Clifton Armory,* 14 Ariz. 360, Ann. Cas. 1915A, 1061, 128 Pac. 810.

It is equally true that an addition to or erasure in an instrument which in nowise changes its legal effect is not a forgery within the criminal law. 26 C. J. 902.

The alleged forgery of the statements then involved only the question of whether the parties named as affiants had actually sworn to them, and not whether they had signed them. The certificate of the notary was presumptive, and, so long as it stood unimpeached, conclusive evidence they had so sworn. We think, however, defendant's conclusion that the evidence as to the signatures was inadmissible does not follow from the admitted premises. The notary had certified to both the signing

and swearing. If his certificate was proved false as to one statement therein, we think the falsity of the other might be reasonably inferred therefrom. *"Falsus in uno, falsus in omnibus,"* is an ancient maxim of the law of evidence perpetuated in one of the stock instructions given as a matter of course in all criminal cases in this jurisdiction, and we see no reason why it should not apply to the silent evidence of a certificate or document, as well as to oral testimony. Had the notary admitted on the stand that the certificate was false as to the signature, the jury could certainly, had it deemed fit, have refused to believe him had he also insisted on its verity as to the oath. Such being the case, we think proper evidence as to the authenticity of the signatures of the affiants Miller and Ellis was admissible as bearing on the question of whether they had actually sworn to their reputed statements.

We think, however, the court erred in admitting the standards of Miller's handwriting, made in Mexico shortly before the trial for the purposes of comparison. It is the general rule that a signature made for the occasion *post litem motam,* and merely for use at the trial, ought not to be admitted as a standard. *Hickory* v. *United States,* 151 U. S. 303, 38 L. Ed. 170, 14 Sup. Ct. Rep. 334; Jones on Evidence, par. 553. The evidence as to how these standards were obtained brings them within this rule.

The next, and to our minds, the most serious, question presented by the assignments of error is the admission of a large amount of evidence concerning some four other applications for loans made about the same time. It is the contention of defendant that they were transactions entirely separate from and in no way connected with the one charged in the information, and that the evidence regarding them in no way tended to prove any of the issues

raised, while their effect was highly prejudicial to him.

The evidence discloses that the transaction on which the information was based was substantially as follows: One K. G. Freeland was in the employ of the Central Bank of Phoenix in the capacity of a teller, defendant being at that time vice-president of the bank. The latter came to Freeland and stated he was intending to apply for a loan of state money on certain land, that some of the other employees in the bank were helping him get the money, and that he would like Freeland to be one of the number. The latter assented, and at defendant's request signed the application for loan, which defendant presented to him already filled in. Thereafter defendant brought Freeland a note and mortgage for $5,000 covering the land referred to in the application. Freeland signed these two documents and also secured the signature of his wife thereto. Some few days thereafter defendant brought Freeland the state warrant for $5,000 in the latter's name, and requested him to indorse it, which Freeland did, and handed the warrant so indorsed to Lewis. Freeland also testified that he had no interest in the securing of the loan himself, and took no part in connection therewith except at the request of defendant, and that some time after the close of the transaction Lewis made him a present of twenty-five dollars for his services in the matter. It also appears that the name of Freeland's wife was signed to the application by someone, but that neither she nor her husband placed her name thereon nor did she authorize anyone to sign it for her.

Of the four other transactions to the admission of evidence concerning which objection was made three were almost exactly similar in their nature to the Freeland one. The applicants were all employees of the bank. Defendant requested them to execute

the application under almost the identical circumstances; they had no real interest in either the property or the loan; defendant received the proceeds of the warrants which were made out to them, and by them indorsed over to him, and in two of the three cases at least the applicants were paid twenty-five dollars by defendant for their services. In one of these the application, according to the evidence, was forged in the same manner as the Freeland application, by someone's affixing the signature of the applicant's wife without her knowledge or consent.

The fourth transaction was an application for a loan made by defendant himself, but there was evidence to the effect that the signature of defendant's wife was written by him and not by her, there being no showing as to whether she had authorized or approved his act in so doing. It was contended by the state that evidence of these transactions was properly offered as showing a common design or scheme on the part of defendant running all through the series of transactions, and thus tending to show he was guilty of the particular offense charged in the information.

It is, of course, the ordinary rule of law that evidence of offenses other than that for which a defendant is on trial cannot be introduced. There are, however, certain exceptions to this general rule. Evidence of other crimes is usually held competent when it tends to establish any one of five different things: First, motive—that is, the commission of the crime charged, to suppress evidence of some other crime; second, intent—as in embezzlement and forgery cases; third, the absence of accident or mistake, such as passing counterfeit coins or bills, or receiving stolen property; fourth, the identity of the person charged with the commission of the crime on trial, as when on a charge of murder it is shown that the crime was committed with a weapon proven

to have been stolen by the defendant at some other time and place; and fifth, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, such as a series of sales of intoxicating liquor shown to establish that defendant did sell the particular liquor charged. These exceptions are well established as part of the law of Arizona. *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279; *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863; *Holder* v. *State,* 31 Ariz. 357, 253 Pac. 629; *Cluff* v. *State,* 16 Ariz. 179, 142 Pac. 644; *Dorsey* v. *State,* 25 Ariz. 139, 213 Pac. 1011.

The question then is, Did proof of the four transactions referred to fall within one of the exceptions above set forth? It was necessary for the state to establish four things: First, that the instrument in question was forged; second, that it was filed in the office of the state treasurer; third, that the defendant knew of its falsity; and, fourth, that so knowing he filed or caused it to be filed. The first issue was proved without contradiction by the testimony of Ruth Freeland. We think the second could be fairly inferred from the testimony of the state treasurer and the records showing the transaction of the state loan board. It is most strenuously contended, however, there is no evidence that defendant ever filed or caused the instrument to be filed, or that he had any knowledge of its falsity. We think it is a fair inference from the testimony of the witness Freeland to the effect that the application was signed at the request of defendant, taken away by him, and never returned, that it passed into the custody of the treasurer and the loan board, and that defendant received the proceeds of the loan; that he either filed it personally, or caused it to be filed. Under that testimony he was the only one who could profit by the filing, and it is therefore a reasonable as-

sumption that he did the things by which he alone could and did profit.

Does evidence of the other transactions tend to corroborate and strengthen this inference? We are of the opinion that it most emphatically does. Suppose, for instance, that defendant had taken the stand and denied absolutely the testimony of Freeland in regard to that transaction. The jury might well, as between the uncorroborated word of the two men, have resolved the doubt in favor of defendant, while if it were shown to them by the testimony of other witnesses that defendant had at approximately the same time handled three other transactions in precisely the same manner, it would no doubt have affected in the highest degree their opinion as to whether defendant or Freeland was testifying truthfully. It is urged that in two of the three transactions in question there is no contention there was any forgery, and that therefore as to these transactions at least the admission of the evidence was erroneous. It is not necessary, however, that in cases of this kind the transactions in question should be identical. *State* v. *Jackson*, 112 Mo. 585, 20 S. W. 674; *Du Bois* v. *People*, 200 Ill. 157, 93 Am. St. Rep. 183, 65 N. E. 658. It is sufficient if the similarity be such that a reasonable man would believe therefrom that the person who had done one of the acts proven had done the other. In other words, there must be a thread of similarity running through the various incidents which would tend to show the same hand engaged in all. Tested by this criterion we think each of the other applications was admissible as tending to prove that defendant both knew of the falsity of the Freeland application, and that he caused it to be filed.

The eighth assignment of error deals with the sufficiency of the evidence. This we have covered in the previous discussion of the case.

The ninth assignment is that the trial court in giving an instruction admittedly correct stated that it was requested by the defendant. While it is better form in all cases that the court should not indicate at whose request any particular instruction is given, yet we have been cited to no cases where a judgment has been reversed for these reasons.

Were the only forged portion of the application the supporting affidavit of Miller, we should reverse the case for the error in the use of improper standards of handwriting for comparison. Since, however, it appears from the undisputed testimony that the signature of Ruth Freeland to the application was forged, this sufficiently satisfies the statute, and the error referred to was immaterial.

There being no reversible error in the case, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.