## BALDWIN MOTORS, INC. *v.* THE AETNA CASUALTY AND SURETY COMPANY

SUPERIOR COURT FAIRFIELD COUNTY FILE No. 113398
AT BRIDGEPORT

Memorandum filed January 30, 1963

*Marsh, Day & Calhoun,* of Bridgeport, for the plaintiff.

*Pullman, Comley, Bradley & Reeves,* of Bridgeport, for the defendant.

COVELLO, J. On March 6, 1958, the defendant issued to the plaintiff a comprehensive dishonesty, disappearance and destruction policy insuring the plaintiff against loss for employee dishonesty and depositors' forgery. The limit of liability for employee dishonesty is $20,000, and for depositors' forgery, $50,000. The policy was issued through the Washington office of the defendant and was in force throughout the year 1959. Under the provisions of the policy, the employee dishonesty coverage is defined as "Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others . . . ." Depositors' forgery coverage is defined as "[l]oss which the Insured . . . shall sustain through forgery or alteration of, on or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by the Insured, or made or drawn by one acting as agent of the Insured, or purporting to have been made or drawn as hereinbefore set forth, including (a) any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee; (b) any check or draft procured

in a face to face transaction with the Insured, or with one acting as agent of the Insured, by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one so impersonated; and (c) any payroll check, payroll draft or payroll order made or drawn by the Insured, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from such payee; whether or not any endorsement mentioned in (a), (b) or (c) be a forgery within the law of the place controlling the construction thereof."

The plaintiff operated a Ford agency in Bridgeport and engaged in the purchase and sale of used cars as well as new cars. In March, 1959, the plaintiff employed one Richard Parilla as a buyer of used cars. In August, 1959, Parilla became the used-car manager and continued in that capacity until the end of 1959. Both in his capacity as used-car buyer and used-car manager, Parilla had authority to purchase used cars for the plaintiff. Throughout Parilla's period of employment it was the practice of the plaintiff to give Parilla its checks with which to buy used cars. The checks were signed in blank by persons authorized by the plaintiff to sign them, and Parilla was given authority to fill in the date, the name of the payee and the amount. All but two of the checks involved in this action bore a stamp stating that the check was for the purchase of cars only or for the purchase of used cars by or for the plaintiff.

Sometime after the commencement of his employment with the plaintiff, Richard Parilla entered into a series of fraudulent transactions with one Frank Piemontese, who did business in New Haven under the firm name of Davenport Auto Sales and Davenport Auto Repairs. These transactions consisted of

sales of new and used cars by the plaintiff to Davenport Auto Sales and the purchase of used cars by the plaintiff from Davenport Auto Sales. All the transactions were recorded on the books of the plaintiff, which were kept by its controller. In the course of his dealings with Piemontese, Richard Parilla turned over to Piemontese forty-four of the plaintiff's checks. These checks had been signed in blank by officers of the plaintiff, and the date, payee and amount was filled in by either Parilla or Piemontese. In each instance, the payee was Davenport Auto Sales or Davenport Auto Repairs. Some of the checks delivered to Piemontese were for cars a portion of which did not exist and were never delivered to the plaintiff; other checks were for cars which were in existence and were delivered to the plaintiff but which were subject to a lien in favor of the C.I.T. Corporation; and others were for cars which existed and were delivered to the plaintiff. As the result of these dealings, the plaintiff claims to have sustained losses amounting to $50,836.68.

At the end of December, 1959, when the loss was discovered, the plaintiff immediately notified Robert W. Brownell of the firm of Bogart and Brownell. Bogart and Brownell were general agents of the defendant in Bethesda, Maryland, and the insurance advisers of the plaintiff. The plaintiff's president told Brownell that this loss would be likely to have a serious effect upon the plaintiff's ability to continue its business and asked him to arrange with the defendant to make immediate payment of the loss. Thereupon Brownell contacted the claims manager of the defendant's office in Washington, who in turn communicated with the defendant's claims manager in Bridgeport, who proceeded to adjust the loss. The defendant's claims manager in Bridgeport did not have a copy of the policy but

was furnished by the defendant's claims manager in Washington with a so-called face sheet showing coverage for employee dishonesty in the amount of $20,000. After an investigation, the defendant's claims manager prepared a proof of loss for the plaintiff. The proof of loss listed a series of checks upon which the plaintiff claimed it sustained a loss and the amount of loss claimed on each check. The proof of loss was signed by the plaintiff's president on January 7, 1960. On January 11, 1960, the defendant issued to the plaintiff its check for $20,000, which the plaintiff cashed. This check bore the notation "In satisfaction of all claims—Under Insuring Agreement I." On April 18, 1960, the plaintiff filed with the defendant a proof of loss making claim under insuring agreement V (depositors' forgery coverage).

The checks here involved fall into three categories: (1) checks issued for cars which were actually in existence and delivered to the plaintiff; (2) checks issued for cars, some of which were not in existence and not delivered to the plaintiff; and (3) checks issued for cars which were subject to liens as in favor of C.I.T. Corporation. As to the checks which were issued for cars under the first category, the plaintiff can have no claim. The evidence discloses that the plaintiff received the cars and resold them at a profit. In the second category, the court finds the following checks:

| Check | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Check | #10348 | $ 5,750 | 1958 | Ford | valued at | | $1350 | missing |
| " | #10359 | 4,200 | 1959 | Mercury | " | " | 2700 | " |
| " | #10523 | 4,000 | 1958 | Oldsmobile | " | " | 1900 | " |
| " | #10607 | 16,725 | 1957 | Cadillac | " | " | 2425 | " |
| " | #10744 | 12,000 | 1957 | Cadillac | " | " | 2000 | " |
| " | #10745 | 9,000 | 1959 | Ford | " | " | 2100 | " |
| | | | 1957 | Oldsmobile | " | " | 1200 | " |
| " | #10836 | 17,300 | 1959 | Cadillac | " | " | 4400 | " |
| | | | 1959 | Ford | " | " | 2200 | " |
| | | | 1958 | Oldsmobile | " | " | 1900 | " |

In the third category are the following checks:

Check # 9801
 1959 Ford Subject to lien of C.I.T. Corporation Loss $1500
Check #10257
 1959 Ford Subject to lien of C.I.T. Corporation Loss 2250
Check #10836
 1959 Ford Subject to lien of C.I.T. Corporation Loss 2200
 1959 Ford Title was in Moran Motors Loss 2200

The plaintiff's claim is based on insuring agreement V, which in the insurance contract is referred to as depositors' forgery coverage. The first question presented is whether the checks above set forth were forged within the meaning of the insurance contract. On the question of the meaning of the term "forgery" in a policy of forgery insurance, the courts are in general agreement that a forgery within the contemplation of the policy is roughly equivalent to an act which under applicable principles of criminal law would amount to the crime of forgery. Note, 52 A.L.R.2d 207, 208. This term, however, is subject to qualification where the policy insuring against forgery contains its own definition of the term. The policy here involved defines depositors' forgery coverage as "[l]oss which the Insured . . . shall sustain through forgery or alteration of, on or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by the Insured, or made or drawn by one acting as agent of the Insured, or purporting to have been made or drawn as hereinbefore set forth, including (a) any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee; (b) any check or draft procured in a face to face transaction with the Insured . . . by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one so imper-

sonated; and (c) any payroll check . . . made or drawn by the Insured, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from such payee; whether or not any endorsement mentioned in (a), (b) or (c) be a forgery within the law of the place controlling the construction thereof."

It is not claimed in this case that there has been any alteration of any of the checks, or that checks were issued to a fictitious payee, or that they were issued in a face-to-face transaction to one impersonating the payee, or that the checks here involved were payroll checks. The plaintiff's claim is that it placed in the possession of Richard Parilla checks signed in blank by its authorized officers for the purpose of buying used cars and that Parilla issued these checks to Davenport Motors for cars, some of which were not in existence and not delivered to the plaintiff or were cars which were subject to liens. The question then is whether the acts of Parilla constituted forgery within the meaning of the insurance policy. While the policy in question was issued in Washington, D.C., the evidence discloses that it was to be performed or have its beneficial operation in Bridgeport and is governed by the law of Connecticut. *Graham* v. *Wilkins,* 145 Conn. 34.

Section 53-346 of the General Statutes provides: "Any person who falsely makes, alters, forges or counterfeits any document or the signature of any person, with intent to defraud another, or utters or publishes as true any false, altered, forged or counterfeited document or signature of any person, with such intent, shall be imprisoned not more than five years." The statute includes within its definition any person who falsely makes or forges or counterfeits any document with intent to defraud another. It is not disputed that the checks here in

question were used to defraud the plaintiff. The only question is whether it can be said that in the light of his authority Parilla falsely made the checks here involved within the meaning of the statute. An agent may commit forgery by making or signing an instrument in disobedience of his instructions or by exceeding his authority. *Selvidge* v. *United States,* 290 F.2d 894; 37 C.J.S. 38, Forgery, § 8. Forgery cannot be committed by the making of a genuine instrument, although the statements made therein are untrue. The term "falsely" has reference not to the contracts or tenor of the writing, nor to the fact stated in the writing, but implies that the paper is false, not genuine, fictitious, not a true writing, without regard to the truth or falsehood of the statement it contains. 37 C.J.S. 37, Forgery, § 5. A consideration of the checks here involved leads to the conclusion that in completing and issuing checks for cars a portion of which were not in existence, Parilla exceeded his authority and consequently such checks were false and not genuine, fictitious and not a true writing. The same does not hold true for the checks which were issued for cars which were in existence but which were subject to the liens of the C.I.T. Corporation. The fact that the checks were signed in blank by the duly authorized officers of the plaintiff does not avail the defendant, for they were not completed instruments until Parilla inserted the date, the name of the payee and the amount.

The plaintiff became aware of the acts of Parilla at the end of December, 1959. It immediately launched an investigation to determine its loss. In this investigation, it had the benefit of the services of its attorney, its controller and others, as well as the cooperation of Parilla. On January 5, 1960, it notified the defendant and urged upon it the immediate settlement of the loss. On January 7, 1960,

the plaintiff filed with the defendant a proof of loss listing the checks upon which it claimed the loss. These checks and the loss claimed as to each of them are #10348—$1350; #10523—$1900; #10607—$2425; #10744—$2000; #10836—$17,300; and #209—$16,280. With the exception of checks 10359, 10745 and 9801, they are the same checks and the same loss for which the plaintiff seeks recovery in this action. The defendant thereupon, on January 11, 1960, issued to the plaintiff its check for $20,000, which the plaintiff accepted and cashed. At the time of the $20,000 payment by the defendant, the plaintiff made no other claim under the policy, and in paying it the defendant assumed that it was discharging its obligation to the plaintiff under the policy in full. The proof of loss of January 7, 1960, contained the statement that it was made without prejudice to the rights of either party. The proof of loss as it applies to the defendant's defense of accord and satisfaction serves to indicate the facts which the plaintiff was aware of and upon which its loss was based.

The court concludes that the payment of $20,000 by the defendant and its acceptance by the plaintiff constitutes an accord and satisfaction of the plaintiff's claims of loss with respect to the checks listed in the proof of loss dated January 7, 1960. Not included in the proof of loss of January 7, 1960, is the loss resulting from check #10359 in the amount of $2700 and check #10745 in the amount of $3300.

Judgment shall be entered for the plaintiff to recover of the defendant $6000 with interest from April 18, 1960, amounting to $1005 making a total of $7005.