605 P.2d 454

**STATE of Arizona, Appellee,**

v.

**Kenneth EDGAR, Appellant.**

**No. 1 CA–CR 3514.**

Court of Appeals of Arizona,
Division 1,
Department A.

July 10, 1979.

Rehearing Denied Sept. 13, 1979.

Review Granted Oct. 2, 1979.

Robert K. Corbin, Arizona Atty. Gen., by William J. Schafer, III, Chief Counsel Criminal Division and Carol Benyi and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Brice E. Buehler, Phoenix, for appellant.

## OPINION

DONOFRIO, Judge.

Appellant was convicted after a trial by jury on September 30, 1976 of knowingly procuring or offering a false or forged instrument to be filed in violation of the then current version of A.R.S. § 39–161. He filed timely motions to vacate the judgment and for a new trial, and the motions were denied. He brings this appeal from the judgment and sentence alleging two claims of error. He urges first that the evidence is insufficient to support the conviction in that the "state never proved that appellant filed or caused to be filed the instruments which were actually recorded." And he argues second that the evidence was insufficient to support the verdict in that the "state never proved that the instruments in question were false or forged." Since both issues raised by the appellant relate to the sufficiency of the evidence, we will set forth herein the pertinent facts and evidence which gave rise to the conviction.

The events complained of occurred during October and November of 1971. At that time, appellant was Sales Manager for Chino Valley Estates, a subdivision of Consolidated Mortgage Company, Prescott, Arizona. Consolidated Mortgage Company was in the business of selling property. One Norma Jean Reid, a 16-year old girl, was an employee of Consolidated, working as a telephone solicitor. The evidence indicated that she was desirous of purchasing property in Chino Valley Estates and asked appellant to sell her a lot. Because she was a minor with no legal capacity to purchase a lot, an alternative method for enabling her to purchase a lot was devised whereby documents for the purchase were executed. A

purchase and sale agreement was entered into indicating that the purchaser was one Norma Jeanne Smith, a widow, whose address was General Delivery, Prescott, Arizona. The evidence at trial indicated that appellant filled in the information on the purchase and sale agreement, but that he did not sign the fictitious name of Norma Jeanne Smith as the buyer.

Norma Jean Reid testified that it was her impression that she could purchase the lot using the fictitious name of Norma Jeanne Smith who was a non-existent person, and that the lot would be hers. It was determined that she would pay for the property through a series of deductions by the appellant from her paychecks. She testified that she signed the purchase and sale agreement and the financial statement with the fictitious name to enable her to complete the purchase. She further testified that appellant assisted her in filling out all the appropriate documents, and that he was present when she signed the fictitious name to the documents. Moreover, she stated that her mother, who was also an employee of Chino Valley, had consistently forbidden her to purchase the lot, and that her mother was not present at the execution of the agreements, and that her mother was distraught when she discovered the purchase. The testimony of the mother corroborated that of Norma Jean Reid. Appellant testified, however, that while he assisted Norma Jean Reid in completion of the documents, he left the room when the documents were signed, and that Norma Jean Reid's mother was present at the time the documents were signed. Appellant further testified that he thought that Norma Jeanne Smith was a real person who agreed to assist Norma Jean Reid in the purchase of the property.

After the instruments were executed they were forwarded to Consolidated Mortgage Company in Phoenix for processing and confirmation. There was testimony to the effect that each time a sale was completed by a salesman, the documents were normally sent to a main office in Phoenix for processing, and at that time, a secretary completed the forms to the extent that they were incomplete, that further, one of the assistants in the Phoenix office would verify the credit information contained on the financial statement, and then recommend that a sale be approved if the credit information was satisfactory. If the sale were approved, the purchase and sale agreement would be signed by an officer of the corporation indicating that he accepted the contract for Consolidated Mortgage Company. Moreover, a document would be completed for purposes of the file which indicated the date of sale, the down payment, the lot number, the buyer, the price, the number of payments, the date the payments started, and the commission due the salesman.

The evidence in this case indicated that Miss Reid's mother had a conversation with the assistant in the Phoenix office whose job it was to verify the credit information, and that the mother indicated her opposition to the sale at that time. The evidence further indicated that the document setting forth the schedule of commissions indicated that the sale was cancelled by virtue of the fact that the word "cancellation" was written at the top of the document. The purported cancellation took place on October 27, 1971. Appellant further testified that he was advised of the cancellation and that from that point forward presumed that the entire transaction was terminated.

The purchase and sale agreement indicates that it was accepted by Consolidated Mortgage Company by virtue of the fact that it was signed by Edward Lazar, an officer of Consolidated Mortgage on October 28, 1971. Moreover, on November 8, 1971, the warranty deed and the realty mortgage on the lot which Miss Reid had attempted to purchase were recorded with the Yavapai County Recorder. The testimony further indicated that the warranty deed and the realty mortgage which were recorded were not prepared by appellant, but were delivered in blank to the office of one of the secretaries in Phoenix. That secretary was under the supervision of a man by the name of Manny Singer. She testified that the secretarial staff prepared the blank instruments. Appellant's signature does not appear on any of the instru-

ments which were ultimately filed, and it was clear from the testimony that he did not assist in their preparation. From the testimony, it is not clear how the instruments came to be filed in the Yavapai County Recorder's office. The County Recorder testified, however, that she did not know or recognize appellant and that she did not remember having seen him present documents to be recorded.

■ Appellant argues first that the verdict was contrary to the weight of the evidence in that the "State never proved that appellant filed or caused to be filed the instruments which were actually recorded in the Yavapai County Recorder's office." The then current version of A.R.S. § 39–161 provided as follows:

> "A person who knowingly procures or offers a false or forged instrument to be filed, registered or recorded in a public office in this state, which, if genuine, could be filed, registered or recorded under any law of this State or the United States, is guilty of a felony."

The only case interpreting that version of A.R.S. § 39–161 is *Lewis v. State*, 32 Ariz. 182, 256 P. 1048 (1927). Therein, the court held that in order for the State to sustain its burden, it must establish four things: "First, that the instrument in question was forged; second, that it was filed in the office of the state treasurer; third, that the appellant knew of its falsity; and, fourth, that so knowing he filed or caused it to be filed." 32 Ariz. at 193, 256 P. at 1052. Appellant argues that the State has failed to prove the fourth element required by *Lewis v. State*, namely, that the defendant knowingly filed or caused to be filed the warranty deed and realty mortgage on the Chino Valley lot.

Appellant argues that while the actual submission for recording was made by other employees of Consolidated, there was sufficient evidence that appellant knowingly "procured" the recording of the false or forged documents, which, appellee asserts, is all that is required by A.R.S. § 39–161. Appellee argues that appellant transacted a land sale knowing that Norma Jean Reid did not have the legal capacity to execute the documents, and that he completed the purchase and sale agreement in his own handwriting. Appellee further argues that appellant allowed Miss Reid to sign the name of a fictitious person, and that despite the protest of Miss Reid's mother and appellant's own knowledge of the illegality of the transaction, he did not destroy the documents, but rather sent them on for normal processing. Appellee further asserts that appellant knew or should have known that the documents would ultimately has recorded in the County Recorder's office. Therefore, according to appellee, by placing the documents in the stream of commerce, appellant created the situation whereby the documents would ultimately be recorded. Appellee finally asserts that the evidence of the cancellation of October 27, was unauthenticated, and that the jury was free to reject the evidence of cancellation.

Appellant counters the State's argument by urging that he did not "procure a false or forged instrument to be filed." He argues that the term "procure", has been defined to mean "to cause a thing to be done, to bring about, effect, or cause." Black's Law Dictionary, Fourth Edition. He says that anything he did to contribute to the ultimate filing and recording of the instruments was nullified by the cancellation, and that there was a break therefore in causation. He argues that the actions which caused the recording to take place were the actions of the individuals in the Phoenix office who recorded the documents in question after the purported cancellation had taken place. He further urges that he was not responsible in any manner for the preparation or recording of the documents. We agree with appellant's contention.

Mrs. Reid, Norma Jean Reid's mother, testified unequivocally that she cancelled the transaction with the assistant in the Phoenix office who was responsible for verifying the credit information. She was uncertain of the date of the cancellation, but testified that it was approximately three to four weeks following the time of the agreement. The agreement was entered into on

October 9, 1971. The instruments were recorded November 8, 1971. Accordingly, the cancellation to which Mrs. Reid testified occurred between the time of the purchase and the time of the recording. She could not remember specifically whether the cancellation had occurred on October 27, 1971, but thought that such might be possible. Norma Jean Reid further testified that she thought that the transaction was cancelled. She indicated that she could not afford the payments on the lot and that after approximately two to three weeks of payroll deductions for purposes of making the payments, she ceased making payments. The secretary in the Phoenix office who was responsible for completing the documents which were ultimately recorded stated that the commission voucher indicated that the sale was cancelled. The appellant testified that he thought that the sale was cancelled, and that he concurred in the cancellation of the sale. There is no evidence in the record to support an inference that the sale was not cancelled other than the fact that the documents were themselves recorded. Nevertheless, the documents which were recorded were not prepared by appellant, nor did they contain his signature, nor was there any evidence to show that he filed them or caused them to be filed as required by *State v. Lewis*, supra.

Appellee argues that when an appellate court is asked to consider a question involving sufficiency of the evidence, this Court does not decide whether it would reach the same decision, but whether there was competent evidence to support the conclusion of the jury. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977); *State v. Toney*, 113 Ariz. 404, 555 P.2d 650 (1976). Appellee further correctly asserts that reversible error involving sufficiency of the evidence question occurs only when there is a complete absence of probative facts to support the verdict of the jury. *State v. Scott*, 113 Ariz. 423, 555 P.2d 1117 (1976); *State v. Childs*, 113 Ariz. 318, 533 P.2d 1192 (1976). Finally, the evidence will be considered in the light most favorable to sustaining the verdict of the jury, and all reasonable inferences must be resolved against the appellant. *State v. Verdugo*, 109 Ariz. 391, 510 P.2d 37 (1973).

While appellee's assertions of the law are correct, we find that there is a complete absence of probative facts to support the verdict of the jury that appellant recorded or caused to be recorded the documents in question.

Since we accept appellant's contentions with regard to his first arguments, it is unnecessary to discuss the second issue raised by appellant. For the foregoing reasons, the judgment and conviction are reversed.

HENRY S. STEVENS, J., Retired, concurs.

WREN, dissenting.

I disagree. Appellant had already performed every act intended or necessary on his part for completion of the crime. He knowingly prepared the false document and submitted it to the people who would prepare and record the deed and mortgage pursuant thereto, and played no part in the attempted cancellation. Moreover, the transaction was completed in *exactly* the way appellant contemplated it would be. The fact that a stranger to the entire transaction attempted a cancellation and appellant thought it had been cannot constitute a defense. *See, United States v. Dost*, 575 F.2d 1303 (10th Cir. 1978), *cert. denied*, 439 U.S. 916, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978), wherein the fact that the defendant might have received some bad advice from his lawyer did not shield him from the consequences of his act.

Since appellant's second claim of error that the use of a fictitious name could not render the document false is frivolous, *Williams v. Territory*, 13 Ariz. 27, 108 P. 243 (1910), I would affirm the conviction.