605 P.2d 450

**The STATE of Arizona, Appellee,**

v.

**Kenneth EDGAR, Appellant.**

**No. 4794–PR.**

Supreme Court of Arizona,
In Banc.

Dec. 20, 1979.

Rehearing Denied Jan. 22, 1980.

---

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Carol Benyi and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Brice E. Buehler, Phoenix, for appellant.

CAMERON, Chief Justice.

This is a petition for review from a decision and opinion of the Court of Appeals which reversed the conviction, judgment, and sentence of defendant Kenneth Edgar for knowingly procuring or offering a false or forged instrument to be recorded. A.R.S. § 39–161 [1]. We have jurisdiction pursuant to Rule 31.19, Arizona Rules of Criminal Procedure, 17 A.R.S.

There are two questions on appeal:

1. Was the instrument false or forged?
2. Did the defendant cause the instrument to be recorded?

The facts necessary for a disposition on appeal are as follows. During October and November of 1971, defendant was sales manager for Chino Valley Estates, a subdivision of Consolidated Mortgage Company. Norma Jean Reid, then a 16 year old girl working as a telephone solicitor for Consolidated, wanted to purchase property at Chino Valley. She asked defendant several times to sell her a lot but he refused because she was a minor.

Eventually, a method by which Norma Jean would purchase the lot under a fictitious name was devised. There is conflicting testimony as to who initially proposed this plan. Norma Jean Reid testified that she thought that if she purchased the lot using the fictitious name of Norma Jeanne Smith, a widow who was a non-existent person, the lot would be hers. She also testified that defendant assisted her in filling out all the appropriate documents, and, according to Norma Jean, defendant was present when she signed the fictitious name to the documents. Norma Jean's mother corroborated her testimony.

Defendant testified, however, that while he assisted Norma Jean in completion of the

---

1. The section was revised slightly effective 1 October 1978.

documents, he was not present when the documents were signed. He stated on direct examination that Norma Jean and her mother together brought the documents to him for completion:

"* * * I looked the paper work over and I said, 'Hey, there's no information on the I.D. statement.' She said, 'Well, maybe you had better help me fill it out.' I went into the booth with her and Norma Jean and we sat down in the closing office or whatever you want to say and she gave me this information and I put it on here, okay? And then I signed down here, as a witness, which probably I shouldn't have signed, you know, and then I said, 'Hey, get this signed.' She said, 'You want me to sign it now?' I said, 'Hey, I don't want to see nothing.' And I left the room."

One of the documents signed by Norma Jean Reid as Norma Jeanne Smith was the realty mortgage which was later recorded along with a warranty deed. This realty mortgage was signed in blank and sent to the Phoenix office by Consolidated Mortgage. "Norma Jeanne Smith's" signature was notarized by a Monte M. Kobey and his notary seal is impressed on the mortgage. The impression of the notary seal of Kenneth Edgar is also on the mortgage but is crossed out.

Norma Jean's mother spoke to Donna Stevens, one of the persons involved in credit verification at the Phoenix office, expressing her opposition to the sale. On 27 October 1971, after this call, the transaction was allegedly canceled. Defendant testified that after that point he presumed the entire transaction was terminated. Both Norma Jean and her mother also testified they thought the agreement was canceled at that time. On 28 October 1971, however, the agreement was "accepted" by a Consolidated Mortgage officer, and on 8 November 1971 a warranty deed and the realty mortgage for the lot were filed with the Yavapai County Recorder. Defendant did not personally record the papers.

Defendant was charged with the violation of A.R.S. § 39–161 which read in part as follows:

"A person who knowingly procures or offers a false or forged instrument to be filed, registered or recorded in a public office in this state, which, if genuine, could be filed, registered or recorded under any law of this state or the United States, is guilty of a felony."

From a jury verdict and judgment of guilt, defendant appealed.

### 1. *Was the mortgage false or forged?*

■ Defendant contends that the instrument was not a "false or forged instrument" within the meaning of the statute. Defendant first contends that there is a difference between a false instrument and a genuine instrument containing false information:

"Forgery cannot be committed by the making of a genuine instrument, although the statements made therein are untrue. The term 'falsely' has reference not to the contracts or tenor of the writing, nor to the fact stated in the writing, but implies that the paper is false, not genuine, fictitious, not a true writing, without regard to the truth or falsehood of the statement it contains." *Baldwin v. Aetna Casualty and Surety Co.*, 24 Conn. Sup. 498, 194 A.2d 709, 712 (1963).

We have no quarrel with the law as stated in *Baldwin*, supra, as it applies to the crime of forgery. However, even if *Baldwin*, supra, applied to the instant crime, it still would not be applicable to the facts of this case. In *Baldwin*, supra, the plaintiff issued to defendant checks signed in blank for the purchase of used automobiles. The checks, then, were genuine even though not used by the defendant for the purposes intended by the person who signed the checks. In the instant case, the signature was fictitious and the mortgage a false instrument.

Defendant further contends, however, that there must be an intent to defraud in order for there to be a forged instrument. Since there was no intent to defraud on the part of Norma Jean Reid, there is no false or forged instrument. We do not agree.

■ Intent to defraud may be an element of the crime of forgery. *State v.*

*Nettz*, 114 Ariz. 296, 560 P.2d 814 (App. 1977); A.R.S. § 13–421(A)(1);[2] see also 36 Am.Jur.2d, Forgery, § 11, p. 686; *State v. Sianez*, 103 Ariz. 616, 447 P.2d 874 (1969). It is not an element of the crime of filing a false instrument of record. We have stated that there are four elements to the crime of filing a false instrument of record, and intent to defraud is not one of them. We have stated the elements as follows:

> "First, that the instrument in question was forged; second, that it was filed in the office of the state treasurer; third, that the defendant knew of its falsity; and, fourth, that so knowing he filed or caused it to be filed." *State v. Lewis*, 32 Ariz. 182, 193, 256 P. 1048, 1052 (1927).

Our statute, A.R.S. § 39–161, was adopted from the California statute. See West Annotated Penal Code, § 115. The California courts have also held that intent is not an element of the crime of filing a false instrument:

> " * * * the crime with which appellant was charged, as defined in the section of the Penal Code hereinbefore referred to, consists in the offering for recordation of an instrument, which is either false or forged, when such instrument is one which, when genuine, is capable of recordation under law. The legislative intention in the enactment of the section is clearly one to protect the integrity of our system of recordation of instruments and the vice interdicted is the placing of false or fictitious instruments of record which might have the effect to cloud the record. Under the section the actual effect of the false or fictitious instrument upon the record title is immaterial to the crime charged. * * * The gist of the offense charged is the offering for record of a false or forged deed. * * *" *People v. Standley*, 126 Cal.App. 739, 745–46, 15 P.2d 180, 183 (1932). See also *People v. Horowitz*, 70 Cal.App.2d 675, 161 P.2d 833 (1945).

We find no error.

**2. *Did the defendant cause the instrument to be recorded?***

Defendant argues that he cannot be guilty because he did not file the instruments himself. We do not agree. Defendant's actions caused an instrument which he knew contained false information to be placed in a situation whereby the instrument would ultimately be recorded. "Whether the document was actually filed with the County Clerk by appellant himself or at his behest is immaterial. In either event, the offense is complete." *People v. Geibel*, 93 Cal.App.2d 147, 169, 208 P.2d 743, 756 (1949). The opposite result would shield from liability those who arrange to have others actually record the false instrument. We believe, for the purposes of the statute, that defendant procured the "instrument to be filed."

Defendant further contends, however, that even admitting his participation in filling out the initial sales agreement, the cancellation broke the causal chain between the action and the eventual recording of the realty mortgage. Again we do not agree. Defendant prepared instruments he knew to contain false information. He then submitted them to people who he had reason to believe would accept and record them. The fact that a stranger to the transaction attempted a cancellation and defendant thought it had been canceled cannot constitute a defense. See *United States v. Dost*, 575 F.2d 1303 (10th Cir. 1978), cert. denied 439 U.S. 916, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978).

Opinion of the Court of Appeals, *State v. Edgar*, 124 Ariz. 476, 605 P.2d 454 (App. 1979) vacated.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.

---

**2.** Title 13 citations in this opinion are to the Arizona Criminal Code as it existed prior to its extensive revision effective 1 October 1978.