**GRAND SHEET METAL PRODUCTS COMPANY, Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY et al., Defendants.**

**Civ. No. B–76–40.**

United States District Court,
D. Connecticut.

Nov. 18, 1980.

Theodore I. Koskoff, Thomas L. Nadeau, Koskoff, Koskoff, Rutkin & Bieder, Bridgeport, Conn., Anthony M. Fitzgerald, Carmody & Torrance, Waterbury, Conn., for plaintiff.

John M. Gorman, Joseph J. McDonough, Clausen, Miller, Gorman, Caffrey & Witrous, Chicago, Ill., John C. Flanagan, Flanagan & Flanagan, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The Plaintiff, Grand Sheet Metal Products Company ("Grand Sheet"), commenced this action to recover the losses it incurred when an explosion and ensuing fire destroyed a plant in Shelton, Connecticut, that it was leasing and obligated by contract to buy from the B. F. Goodrich Company ("BFG"). Plaintiff named as defendants 36 insurance companies ("Insurers") that are each bound, under an insurance contract that is the subject matter of this lawsuit, to pay specified percentages of any loss that falls within the coverage of the policy. Jurisdiction is alleged to be founded upon 28 U.S.C. § 1332.

Three issues are pending decision by this Court: 1) the Insurers' motion to dismiss; 2) the Insurers' motion to amend; and 3) the parties' motion for a determination as to whether the law of Connecticut or the law of Illinois is to be applied in interpreting the measure of payment due Grand Sheet.

I

The Insurers move to dismiss the action on the ground that the parties are not of diverse citizenship, as required by 28 U.S.C. § 1332. To support their claim that this Court lacks subject matter jurisdiction, the Insurers argue as follows: 1) Grand Sheet's action is in reality a suit against the Factory Insurance Association ("FIA"), an unincorporated association of insurance companies, which issued the policy upon which the defendants' liability is predicated; 2) each of the defendants is a member of the FIA; 3) three of the named defendants and two unnamed insurance companies, also members of the FIA, are citizens of the State of Illinois; 4) Grand Sheet is a citizen of Illinois; and 5) therefore, the action must be dismissed for lack of diversity jurisdiction. Defendants cite as authority *United Steelworkers of America, AFL–CIO v. R. H. Bouligny, Inc.,* 382 U.S. 145, 147, 86 S.Ct.

272, 273, 15 L.Ed.2d 217 (1965); *Baer v. United Services Automobile Association*, 503 F.2d 393, 395 (2 Cir. 1974); and *Arbuthnot v. State Automobile Insurance Association*, 264 F.2d 260, 261 (10 Cir. 1959).

Upon learning that its citizenship was not diverse from that of three of the named defendants (American Casualty Company of Reading, National Fire Insurance Company of Hartford, and Royal Globe Insurance Company), Grand Sheet requested and received permission to drop these defendants as parties. Fed.R.Civ.P. 21. Subsequently, it amended its complaint, deleting the non-diverse insurers and waiving any claims against them. In addition, Grand Sheet has waived all rights to recover with respect to the two insurance companies (Continental Casualty Company and Zurich Insurance Company) not joined as parties, and admits that they were not sued solely to preserve federal diversity jurisdiction over this case.

■ Although on the present state of the pleadings there is now diversity between Grand Sheet and all defendants, the Insurers continue to assert a right to dismissal. They contend that, because FIA is a "very necessary party" to the lawsuit, the citizenship of its nondiverse members, though they are not named as parties, is sufficient to destroy the Court's diversity jurisdiction. The defendants base this conclusion on the principle that the citizenship of an unincorporated association for diversity purposes is determined by reference to the citizenship of *all* its members. *United Steelworkers of America, AFL–CIO v. R. H. Bouligny, Inc.* supra; *Baer v. United Services Automobile Association*, supra; *Arbuthnot v. State Automobile Insurance Association*, supra. The Court disagrees.

Unlike the situation in the *Baer* and *Arbuthnot* cases, supra, the unincorporated association here was not named as a party; Grand Sheet neither sets forth a cause of action against FIA nor seeks any relief directly affecting FIA. The FIA is not, as were the associations in *Baer* and *Arbuthnot*, a reciprocal or inter–insurance exchange. Rather, the FIA is an insurance pool or syndicate which serves merely as an agent for its member insurers, and is not liable as an insurer/payor under the terms of the policy or under law. See *Milligan v. Anderson*, 522 F.2d 1202, 1205 (10 Cir. 1975); *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1245–46 (E.D.Va.1977); *Cone Mills Corporation v. Hurdle*, 369 F.Supp. 426, 438 (N.D.Miss.1974).

Moreover, contrary to the position advanced by the Insurers, it is clear that the FIA and its nondiverse members are not indispensable parties under the standards of Rule 19(b) of the Federal Rules of Civil Procedure. See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–12, 118–19, 124–25, 88 S.Ct. 733, 737–39, 743, 745–46, 19 L.Ed.2d 936 (1968); *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493, 496–98 (2d Cir. 1977). The rights and obligations existing under the insurance policy in question can be fully and adequately determined in the absence of the FIA and its non–joined members. Because Grand Sheet seeks recovery solely against the present defendants and has expressly waived damages from the unnamed insurers, the possibility of prejudice to the FIA, its nondiverse members, or its named members is nonexistent. Cf. *Jett v. Phillips & Associates*, 439 F.2d 987, 990 (10 Cir. 1971) (unincorporated association which was jointly and severally liable as co–maker of a note held not an indispensable party to an action on the note against the other co–makers). On the other hand, it is apparent that a statute of limitations defense will deprive the plaintiff of an adequate remedy in the state courts if this federal action is dismissed. See 7 C. A. Wright and A. R. Miller, *Federal Practice and Procedure*, § 1608 at 80 (1972).

We are further fortified in our ruling by Judge Edward R. Becker's reasoned opinion in *Kaplan v. Industrial Risk Insurers*, 86 F.R.D. 484 (E.D.Pa.1980). There, under factual circumstances strikingly similar to those in the case *sub judice*, Judge Becker held that a loss payee on a certificate of insurance issued by an unincorporated association could preserve its choice of a federal forum by suing only those members of the

association who were diverse from it. Because the diverse parties sued were severally liable under the policy and the plaintiff opted for less than complete recovery, no prejudice to the unnamed, nondiverse insurers was found. As a result, Judge Becker determined that the members of the association who were not sued were neither "persons to be joined if feasible" under Fed.R. Civ.P. 19(a) nor "indispensable parties" under Rule 19(b).

Accordingly, the Insurers' motion to dismiss is denied.

## II

The Insurers also seek to amend their answer by the addition of a special defense, alleging in effect that the insurance coverage in question was voided by certain acts and misrepresentations made by Grand Sheet's executive officer, Mr. Charles D. Moeller, and by its secretary–treasurer, Mr. Lowell D. Powell. More particularly, the amendment recites that the loss occasioned by the explosion and fire at the Shelton plant was the result of an arson, participated in directly or indirectly by these officials of the plaintiff.

Plaintiff opposes the motion, brought 20 months after the filing of the complaint, as untimely and prejudicial. It argues that the defendants had full knowledge of the suspected arson as early as April 23, 1975, when a grand jury in this District indicted Mr. Moeller and others of arson–related offenses in connection with the fire at the Shelton plant. While conceding that Mr. Moeller was acquitted of the federal charges on February 11, 1976, the plaintiff submits that the trial provided the defendants with sufficient information to formulate and file their special defense at the time this action was commenced on February 17, 1976.

In response, the defendants point out that they did not possess all the necessary evidence to support their special defense until May 1977, less than six months prior to filing their motion to amend. At that time, bench warrants, based on affidavits of convicted co–defendants of Mr. Moeller in the federal court trial, were issued by state authorities for the arrest of Mr. Moeller and Mr. Powell on charges of conspiracy to commit arson at the Shelton plant. Defendants further contend that their amendment will not unduly prejudice the plaintiff because counsel for the plaintiff also represent Mr. Moeller in the state court criminal proceedings, and the plaintiff is presently litigating the arson issue in a related state civil court proceeding.

■ Under the provisions of Fed.R.Civ.P. 15(a), leave to amend pleadings is to be "freely given when justice so requires." This phrase should be broadly construed to comport with the general policy of the Federal Rules of Civil Procedure to permit and encourage disposition of litigation on the merits. As the Supreme Court stated in *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Thus it is settled law that Rule 15(a) permits amendments to pleadings "[in] the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . . ."–justifying denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). See also, e. g., *S. S. Silberblatt, Inc. v. East Harlam Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979); *Clay v. Martin*, 509 F.2d 109, 113 (2d Cir. 1975); *Middle Atlantic Utilities Co. v. S. M. W. Development Corp.*, 392 F.2d 380, 384–86 (2d Cir. 1968); *Holman v. Carpenter Technology Corp.*, 484 F.Supp. 406, 408–09 (E.D.Pa.1980); *Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1047, 1057 (E.D.N.Y.1975); *Applied Data Processing, Inc. v. Burroughs Corp.*, 58 F.R.D. 149, 150 (D.Conn.1973).

In the instant case, while the Insurers' delay in proffering a significant and material defense under the policy may seem highly unusual, it is not dispositive. *Applied Data Processing, Inc. v. Burroughs Corp.*, supra at 150 (amendment to complaint permitted 19 months after filing of complaint). The record discloses that the delay was not the result of bad faith or dilatory motives on the part of the Insurers, but, rather, is attributable to their cautious reluctance to assert a defense until related judicial proceedings indicated that the defense had substantial merit. Moreover, the amendment will not unduly burden or prejudice the plaintiff nor seriously delay the resolution of this case. Under all the circumstances, the Court is satisfied that the interests of justice and a full and fair trial on all the merits mandate that the Insurers be given the opportunity to present their special defense.

Therefore, the Insurers' motion for leave to amend their answer is granted.

### III

The third issue presented concerns the criteria to be applied in determining the monetary loss sustained by the plaintiff because of the destruction of the Shelton plant.

At the time of the fire, the Shelton plant was owned by BFG and leased to the plaintiff. The contractual arrangement between BFG and the plaintiff imposed the risk of loss with respect to the property on the plaintiff, but further provided that the property would be covered under BFG's insurance. Thus the plaintiff was a loss payee under the policy.

It is not disputed that the contract of insurance was made in Chicago, Illinois, and that it insured both personal and real property owned by BFG in 40 states "to the extent of the actual cash value of the property at the time of loss."

The courts of the various states, including those of Connecticut and Illinois, have announced different tests for ascertaining "actual cash value" within the meaning of the indemnification clause of a fire insurance policy. Annot., 61 A.L.R.2d 711 (1958). Illinois employs a fixed standard—reproduction cost less depreciation—to arrive at the actual cash value of the insured's property. See, e. g., *Chicago Title & Trust Co. v. United States Fidelity & Guaranty Co.*, 511 F.2d 241, 244–45 (7 Cir. 1975); *Smith, For Use of Inter–Ocean Casualty Co. v. Allemannia Fire Ins. Co. of Pittsburgh*, 219 Ill.App. 506, 513 (1920). To date the Connecticut Supreme Court has not enunciated a definition of the term. However, it appears that the Connecticut lower courts have adopted the "broad evidence rule" by which actual cash value is determined by the consideration of "any evidence logically tending to a correct estimate of the value of the property lost." *Castoldi v. Hartford County Mutual Fire Ins. Co.*, 21 Conn.Supp. 265, 269–70, 154 A.2d 247, 250 (1959); see *Sullivan v. Liberty Mutual Fire Ins. Co.*, 174 Conn. 229, 232, 384 A.2d 384, 385–86 (1978).

In terms of actual dollars, the parties are convinced that the Illinois rule could yield a much greater return in the instant case than the Connecticut method of proof. Understandably the plaintiff here presses for the application of the Illinois criteria while the Insurers argue for the utilization of the Connecticut test.

The parties agree that, this being a diversity case, the question must be resolved in accordance with Connecticut's prevailing conflict of laws rule regarding the interpretation and operation of contracts. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Westchester Fire Ins. Co. v. Tantalo*, 273 F.Supp. 7, 16 (D.Conn. 1967). As a general rule, Connecticut determines the validity and construction of a contract by looking to the law of the place where the contract was made; but if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, the Connecticut rule is that the law of the place of operative effect or performance governs its validity and construction. *Whitfield v. Empire Mutual Ins. Co.*, 167

Conn. 499, 505–06, 356 A.2d 139, 143 (1975); *Breen v. Aetna Casualty & Surety Co.*, 153 Conn. 633, 637, 220 A.2d 254, 256–57 (1966); *Jenkins v. Indemnity Ins. Co. of North America*, 152 Conn. 249, 253, 205 A.2d 780, 782–83 (1964).

In this Court's opinion, the Connecticut test governs for the following reasons. First, while it is true that the contract of insurance was executed in Illinois and no express choice of law is specified in the policy, these facts do not automatically impose Illinois law. Connecticut's *lex loci contractus* rule is subject to the "place of operative effect" exception, which controls under the circumstances in the instant case. Connecticut is the jurisdiction within which the insurance contract was to have its beneficial operation and effect as to the Shelton property. See *Graham v. Wilkins*, 145 Conn. 34, 40, 138 A.2d 705, 708 (1958); *Baldwin Motors, Inc. v. Aetna Casualty & Surety Co.*, 24 Conn.Supp. 498, 504, 194 A.2d 709, 712 (1963).

Second, application of the Connecticut test would be supported by § 193 of the Restatement (Second) of Conflict of Laws (1971). Although the Second Restatement's principles for contracts cases have not been explicitly accepted, or rejected, by the Connecticut courts, cf. *Gibson v. Fullin*, 172 Conn. 407, 411, 374 A.2d 1061, 1064 (1977); *Landers v. Landers*, 153 Conn. 303, 305, 216 A.2d 183, 184 (1966) (Second Restatement approach not accepted in torts cases), the choice of law here would be the same under the Connecticut rule or the Restatement approach. The policy covers fire losses on properties owned by BFG throughout 40 states and is, therefore, a multiple risk policy. Section 193 of the Restatement provides:

§ 193. Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state had a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Comment f refers to multiple risk policies and states in relevant part:

f. Multiple risk policies. A special problem is presented by multiple risk policies which insure against risks located in several states. * * * Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved [several] policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X.

Thus, the Restatement, as applied to multiple risk policies, would counsel application of the law of the locus of each risk. See *Raymond v. Monsanto Co.*, 329 F.Supp. 247, 249–50 (D.N.H.1971).

Third, the provisions of the policy itself reveal that the rights of the parties would be governed by local law. For example, the cover page of the policy recites that it is a "Standard Fire Insurance Policy for ... Connecticut ...," and that any provision of the policy which is in conflict with the statutes of the state wherein the property covered is located "is hereby amended to conform" with the laws of that state. Also, the Amendatory Endorsements included within the policy specifically indicate that the rights of the parties would be determined by the applicable law of the individual states in which the properties insured were situated.

Finally, the record further indicates that prior to this lawsuit BFG received payments for numerous fire losses in accordance with the laws of the various states in which the losses occurred.

Accordingly, the term "actual cash value" as used in the policy will be interpreted by reference to the law of the State of Connecticut.